

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-22-2008

# CNA v. USA

Precedential or Non-Precedential: Precedential

Docket No. 06-5104

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"CNA v. USA" (2008). *2008 Decisions.* Paper 753.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/753

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-5104

_____

CNA; CONTINENTAL CASUALTY COMPANY,
the Workers' Compensation Carrier
for RTR Business Products,
as Subrogee of Michael Lahoff;
MICHAEL LAHOFF, (brought in his name
and on his behalf by CNA and
Continental Casualty Company as subrogee)


v.


UNITED STATES OF AMERICA; KOREY LEWIS

                          CNA;
                          Continental Casualty Company;
                          Michael Lahoff,

                                   Appellants

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 06-cv-00126)
District Judge: Honorable Donetta W. Ambrose

_____

Submitted Under Third Circuit LAR 34.1(a)
February 4, 2008

Before: MCKEE and AMBRO, Circuit Judges,
and IRENAS,* District Judge

(Filed: July 22, 2008)

Daniel L. Hessel, Esquire
Golkow Hessel
1800 John F. Kennedy Boulevard
Suite 1010
Philadelphia, PA   19103

Counsel for Appellants

Mary Beth Buchanan
   United States Attorney
Robert Greenspan, Esquire
Edward Himmelfarb, Esquire
United States Department of Justice
Civil Division
950 Pennsylvania Avenue, N.W.
Washington, DC   20530-0000

Laura S. Irwin, Esquire
Office of the United States Attorney

---

*Honorable Joseph E. Irenas, Senior District Judge for the District of New Jersey, sitting by designation.

700 Grant Street, Suite 4000
Pittsburgh, PA   15219-0000

Counsel for Appellee

---

OPINION OF THE COURT

---

AMBRO, Circuit Judge

CNA and Continental Casualty Company,[1] stepping into the place of Michael Lahoff as his subrogees, sued the Government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80.  They base their claims on negligence that they allege led to Lahoff being severely injured. CNA and Continental (hereinafter "Subrogees") appeal the District Court's order granting the Government's motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  They raise two arguments on appeal: that the District Court applied the wrong procedural framework when it ruled that it lacked subject matter jurisdiction; and that the Court erred by dismissing the case

---

[1] The cover pages of the parties' briefs refer to Continental Casualty Company as "Continental Insurance Company," which does not match the appellants' corporate disclosure statement and thus appears to be a typographical error.

3

despite Subrogees' alternative theories of liability against the Government. For the reasons that follow (though they differ from those of the District Court), we affirm.

## I. Facts

In January 2003 Marty Allen Armstrong, Jr. and an accomplice walked onto the seventh floor of a downtown Pittsburgh parking garage and robbed Lahoff at gunpoint. After Lahoff gave Armstrong his wallet, and the $15 in it, Armstrong shot Lahoff in the neck, resulting in his paralysis from the neck down. At the time of the shooting, Lahoff was employed by RTR Business Products and was working within the course and scope of his employment. Subrogees were the workers' compensation carriers for RTR. They have paid nearly $1 million in workers' compensation benefits and expect that their future payments will total another $4 million.

Armstrong was a recruit in the United States Army's Delayed Entry Program, and a few weeks short of graduating from high school in Pittsburgh, when he shot Lahoff. The Program, authorized under 10 U.S.C. § 513, allows a recruit to enlist in the Army and receive a cash bonus before his high school graduation. If, however, the recruit fails to graduate, he is separated from the Program. In order to be admitted into it, a prospective recruit must pass a criminal background check and a drug test. Armstrong passed the background check and the drug test on July 26, 2002, and enlisted in the Program that day.

4

While the background check revealed nothing that precluded Armstrong from enlisting, he in fact had a troubled past. As a 13-year-old, he was charged with aggravated criminal sexual assault, a charge that was dismissed in 2001. The same year, Armstrong was twice charged with disorderly conduct, and was involuntarily committed to Allegheny Valley Hospital for psychiatric evaluation.

Armstrong was recruited by Staff Sergeant Korey Lewis, an Army recruiter attached to the Pittsburgh Recruiting Battalion. Part of Lewis's job was to stay in regular communication with recruits in the Program. In late December 2002, he learned that Armstrong's mother had kicked him out of her house and that he had no place to stay. Lewis discussed this situation with his supervisor, Sergeant First Class Joseph Albrecht. Albrecht told Lewis to "make sure" that Armstrong did not stay at his (Lewis's) apartment. Lewis attempted to find Armstrong housing at local shelters.

When Lewis's attempts proved unsuccessful, he allowed Armstrong to live in his apartment. This not only violated the direct order of his superior noncommissioned officer, it breached United States Army Recruiting Command Regulation 600-25, which states that the Program's recruits are prohibited from "[s]haring of lodging" with personnel attached to the Army Recruiting Command.

While staying at Lewis's apartment, Armstrong

5

discovered that Lewis had a 9 mm Taurus handgun in an unlocked metal tin in his bedroom. Armstrong took this gun from Lewis's apartment and used it to rob and shoot Lahoff.

## II. Procedural History

Subrogees brought this suit based on their claim that the Government had waived sovereign immunity under 28 U.S.C. § 1346(b)(1) of the FTCA. That provision allows plaintiffs to bring claims based on the action of Government employees when private persons engaging in analogous behavior would be liable under state law. This waiver of sovereign immunity is subject to several requirements and limitations contained in § 1346(b)(1) itself, as well as 28 U.S.C. §§ 2671–2680, which we address in detail below.

In Subrogees' amended complaint, they assert that the Government was vicariously liable for Lewis's negligence.[2] Subrogees also claim that the Army itself, largely through the actions and omissions of Lewis's supervisors, was independently negligent. Specifically, they allege that the Army failed to enforce its regulations; hired, trained, and supervised Lewis negligently; failed to conduct a proper background check

---

[2] In addition to the Government, Subrogees initially sued Lewis (in his official capacity only), but later stipulated to his dismissal from the case. The Government is the only proper defendant in a case brought under the FTCA.

6

on Armstrong; and pressured prospective recruits to enlist in order to meet recruitment goals, making recruitment goals more important than the welfare of society.

The Government moved for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction or, in the alternative, Rule 12(b)(6) for failure to state a claim on which relief can be granted. As a third option, it moved for summary judgment under Rule 56. The Government did not file an answer. In a memorandum of law accompanying its motion, it contended that Lewis was acting outside the scope of his employment, and thus his actions did not fall within § 1346(b)(1). The Government's memorandum also addressed the alleged independent negligence of the Army, arguing that the actions of the Army and of Lewis's supervisors were too remote from the shooting for liability to attach to the Government.

Subrogees filed a brief opposing the Government's motion. They attached exhibits to their brief that included newspaper accounts describing Lahoff's shooting, Armstrong's criminal and psychological history, and challenges the Army had recently faced in its recruiting efforts.

The District Court chose to analyze the Government's motion under Rule 12(b)(1), treating the scope-of-employment question as one of subject matter jurisdiction. As a result, its first task was to classify the Government's motion as either a

factual attack or a facial attack. The latter concerns "an alleged pleading deficiency" whereas a factual attack concerns "the actual failure of [a plaintiff's] claims to comport [factually] with the jurisdictional prerequisites." *U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.*, 473 F.3d 506, 514 (3d Cir. 2007). It appears the District Court characterized the Government's motion as a factual attack because the motion challenged whether the District Court actually had subject matter jurisdiction based on the facts alleged. *See* Dist. Ct. Op. at 2–3 (describing the Government's motion as "based on the existence of jurisdiction").

That the Government's Rule 12(b)(1) motion made a factual attack had three important procedural consequences for the District Court. First, on a Rule 12(b)(1) motion, "no presumption of truthfulness attaches to the allegations of the plaintiff." Dist. Ct. Op. 3. Second, the Court placed the burden of proving subject matter jurisdiction on the plaintiff. Third, it noted its authority to "make factual findings which are decisive to the issue." *Id.*

After a factual inquiry that extended beyond the pleadings, *see* Dist. Ct. Op. 6 (noting "careful consideration of Defendant's Amended Motion to Dismiss . . . *and related submissions*" (emphasis added)), the District Court granted the motion to dismiss for lack of subject matter jurisdiction. It stated that the location of Lewis's conduct is "undisputed" and thus found "no issue that SSG Lewis's conduct occurred outside

8

authorized time and space limits of employment," which is one of the required factors under Pennsylvania's definition of conduct in the scope of employment.  Dist. Ct. Op. 5.  The Court's opinion did not discuss the Army's alleged independent negligence.  Subrogees now appeal to our Court.

## III. Appellate Jurisdiction and Standard of Review

We have jurisdiction over an appeal of a dismissal for lack of jurisdiction pursuant to 28 U.S.C. § 1291.  We exercise plenary review over legal conclusions.  *Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006).  We review the District Court's findings of fact for clear error.  *Carpet Group Int'l v. Oriental Rug Importers Ass'n*, 227 F.3d 62, 69–70 (3d Cir. 2000).  The clearly erroneous standard of review also applies to findings of fact related to jurisdiction.  *See, e.g., Chayoon v. Chao*, 355 F.3d 141, 143 (2d Cir. 2004); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350, at 255, 264 & n.79 (3d ed. 2004).

## IV. Proper Subsection of Rule 12

The Government contends that the District Court lacked subject matter jurisdiction.  In its view, the six conditions on the waiver of sovereign immunity in the FTCA, quoted below, are jurisdictional requirements.  They argue that Subrogees did not meet one of the statutory conditions because Lewis was acting outside the scope of his employment; hence there is a failure of

9

federal subject matter jurisdiction. The District Court agreed with the Government and, as noted above, dismissed the case under Rule 12(b)(1).

On appeal, Subrogees argue that the determination of whether an employee acted within the scope of his employment is a question of the merits, or at least a simultaneously merits-based and jurisdictional question. Thus, they argue that the District Court erred by considering whether Lewis acted within the scope of his employment on a Rule 12(b)(1) motion. In their view, the Government's motion to dismiss should have been treated as either a Rule 12(b)(6) motion to dismiss for failure to state a claim or a Rule 56 motion for summary judgment,[3] which they believe their claims would have survived.

Whether a Government employee was acting within the scope of his employment plausibly could be addressed as one of jurisdiction or one of the merits of a claim. That choice corresponds to whether Rule 12(b)(1) or, on the other hand, Rule 12(b)(6) or Rule 56 provided the proper procedure. A great deal turns on this question because Rule 12(b)(6) or Rule 56 would provide more procedural safeguards to the plaintiff Subrogees than does Rule 12(b)(1). For example, a district

_____

[3] The argument for applying Rule 56 rather than Rule 12(b)(6) is that the District Court looked outside the pleadings, which is not allowed on a motion to dismiss for failure to state a claim under Rule 12(b)(6).

10

court acting under Rule 12(b)(1) may independently evaluate the evidence regarding disputes over jurisdictional facts, rather than assuming that the plaintiff's allegations are true. *See infra* Section IV.C.[4]

We think treating the scope-of-employment issue as jurisdictional in the FTCA context is the better course. We so hold because the FTCA defines federal courts' jurisdiction to hear cases seeking damages from the Government, and the conditions on the FTCA's waiver of sovereign immunity appear in the same statutory provision that grants jurisdiction. Moreover, the jurisdictional issue in this case is not overly intertwined with the merits of Subrogees' claims. The District Court thus was correct to apply Rule 12(b)(1) in this case.

## A. Source of Jurisdiction

Subrogees contend that allegations made under the FTCA are enough to trigger federal-court jurisdiction and that their claims should survive a Rule 12(b)(1) motion based on their

---

[4] Even if a question is one of the merits, a plaintiff's claim may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) if it "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946). This exception to the jurisdiction/merits—*i.e.*, Rule 12(b)(1)/Rule 12(b)(6)—dichotomy does not apply here.

mere invocation of the FTCA.  We start by observing that the District Court's jurisdiction—if it exists—would *not* come from the general grant of federal-question jurisdiction of 28 U.S.C. § 1331.  Instead, the FTCA itself is the source of federal courts' jurisdiction to hear tort claims made against the Government that meet various criteria: "[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States."  28 U.S.C. § 1346(b)(1).  As the Supreme Court has stated, "[t]he United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted).  Thus, FTCA plaintiffs must meet the criteria of § 1346(b)(1) before a district court may exercise jurisdiction.

In particular, § 1346(b)(1) lists six threshold requirements that a plaintiff's claim must satisfy to confer jurisdiction.  A claim must be made

> "[1] against the United States, [2] for money damages, . . . [3] for injury or loss of property, or personal injury or death [4] caused by the negligent or wrongful act or omission of any employee of the Government [5] while acting within the scope of his office or

12

employment, [6] under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

*FDIC v. Meyer*, 510 U.S. 471, 477 (1994) (quoting 28 U.S.C. § 1346(b)(1)) (alterations in original). The cause of action in an FTCA claim, on the other hand, must come from state tort law. *Id.* at 478 (describing state tort law as "the source of substantive liability under the FTCA").

Unfortunately, the split between jurisdiction and the merits is not always clear. The same facts may apply to whether an employee acted within the scope of his employment and, say, whether that employee breached a duty under state law. In the context of the FTCA, as well as other areas, separating jurisdictional facts from factual issues relating to the merits has generated difficult problems, as we discuss below.

**B. Jurisdiction or Merits?**

Subrogees make a number of arguments to the effect that the District Court handled this case from the wrong procedural posture by dismissing under Rule 12(b)(1) for lack of subject matter jurisdiction. As noted, they also contend that their amended complaint should survive a motion to dismiss on the

merits under Rule 12(b)(6) or a motion for summary judgment under Rule 56.  We discuss these arguments in turn.  As noted, we agree with the District Court that the Government's motion—styled in the alternative as made on any of Rule 12(b)(1), Rule 12(b)(6), or Rule 56 grounds—was properly analyzed as a Rule 12(b)(1) motion.

### 1. Congress's Authority Versus Federal Courts' Jurisdiction

Subrogees rely on *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895 (3d Cir. 1987), for their contention that an attack on the merits of the claim must be handled under Rule 12(b)(6) or Rule 56.  In that case, the petitioner alleged a violation of his civil rights protected by 42 U.S.C. § 1983.  *Id.* at 896.  Following a preliminary injunction hearing, the District Court dismissed the case for lack of subject matter jurisdiction because there was no state action.  *Id.*  On appeal, we noted that the existence of state action in a § 1983 suit was a question of Congress's power under § 5 of the Fourteenth Amendment ("sometimes refer[red] to . . . as jurisdictional"), as opposed to a question of the federal courts' jurisdiction under Article III. *Id.* at 898.  We reversed the District Court's dismissal because issues of congressional authority, like state action, come too close to the merits of a suit.  *Id.* ("Otherwise, the district court could turn an attack on the merits . . . into an attack on jurisdiction . . . .").

14

The FTCA's waiver of sovereign immunity represents Congress's setting the federal courts' jurisdiction over tort lawsuits against the Government. It is not an example of Congress acting at the outer bounds of its own constitutional power, as in *Kulick* (in the § 1983 context), or as in *Mortensen v. First Federal Savings and Loan Ass'n*, 549 F.2d 884, 890–92 (3d Cir. 1977) (applying Rule 12(b)(6) rather than Rule 12(b)(1) in the context of the interstate commerce requirement of antitrust law). Thus, *Kulick* does not govern this case.

### 2. Clear Congressional Statement

In *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006), the Supreme Court held that the fifteen-employee threshold, 42 U.S.C. §§ 2000e(b), for employment discrimination claims under Title VII of the Civil Rights Act of 1964 was not properly treated as jurisdictional. Instead, that threshold is a merits-based question. The Court noted that since the Federal Question Jurisdictional Amendments Act of 1980, Pub. L. 96-486, § 2, 94 Stat. 2369, federal courts' jurisdiction over Title VII claims has come from 28 U.S.C. § 1331 rather than the jurisdictional provision within Title VII itself, 42 U.S.C. § 2000e-5(f)(3). *See* 546 U.S. at 506. Because "neither § 1331, nor Title VII's jurisdictional provision, specifies any threshold ingredient akin to 28 U.S.C. § 1332's monetary floor," the Court held that it was most prudent to treat statutory threshold requirements as jurisdictional only when Congress explicitly makes them so. 546 U.S. at 515–16; *see also Nesbit v. Gears Unlimited, Inc.*,

15

347 F.3d 72, 81 (3d Cir. 2003) ("We doubt that Congress intended this definitional section [42 U.S.C. § 2000e(b)] to have subject matter jurisdictional import.").

*Arbaugh* does not apply directly to our case, as it dealt with Title VII rather than the FTCA. But the reasoning of *Arbaugh* suggests that the conditions laid out in the FTCA are jurisdictional in nature, as jurisdiction for courts to hear suits against the Government have their threshold set out in § 1346(b)(1). We recently applied *Arbaugh*'s reasoning to consider whether a statutory requirement in the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) is jurisdictional or an element of a claim. *Beazer East, Inc. v. Mead Corp.*, 525 F.3d 255, 261 (3d Cir. 2008). To evaluate whether Congress "clearly stated" that a requirement should " 'count as jurisdictional,' " *id.*, we ask whether the requirement appears in or receives mention in the jurisdictional provision of a given statute, *see Arbaugh*, 546 U.S. at 515–16 & n.11.

The scope-of-employment requirement of the FTCA appears in the same sentence as Congress's grant of jurisdiction. *See* 28 U.S.C. § 1346(b)(1). "[J]urisdiction" in § 1346(b)(1) suggests that each clause of that provision represents a limitation on Congress's waiver of sovereign immunity and thus a limitation on federal courts' jurisdiction. By contrast, the fifteen-employee requirement of Title VII appeared in a separate

16

provision from the jurisdictional provision.[5] *See Beazer East*, 525 F.3d at 261 n.8 ("The absence of a reference to § 113(f) in § 113(b), 42 U.S.C. § 9613(b), CERCLA's jurisdictional provision, is notable because that provision expressly subjects its grant of jurisdiction to subsections (a) and (h) of § 113."). This distinction—whether a statute contains within itself the bounds of its jurisdiction—counsels the result in our case. Section 1346, by subsection (b)(1), tethers jurisdiction to meeting that subsection's requirements.[6]

---

[5] *Arbaugh* cites 28 U.S.C. § 1346(a)(2)—which neighbors § 1346(b)(1) in the U.S. Code, although it was not part of the FTCA—as a counter-example to 42 U.S.C. § 2000e(b). Subsection 1346(a)(2) sets a damages ceiling of $10,000 in its particular waiver of sovereign immunity. Unlike 42 U.S.C. § 2000e(b), § 1346(a)(2) provides conditions on subject matter jurisdiction within the *same* statutory provision that grants jurisdiction. This is an example of Congress "exercis[ing] its prerogative to restrict the subject matter jurisdiction of federal district courts." *Arbaugh*, 546 U.S. at 515 n.11. We find this *dictum* in *Arbaugh* to suggest how we should interpret § 1346(b)(1).

[6] Subrogees argue in a Rule 28(j) letter that *Beazer East* supports their position. But *Beazer East* does not govern our case, as it concerns an interpretation of CERCLA rather than the FTCA. Moreover, in a *dictum* in that case, we stated that the "unique nature of suits against the United States" has led other courts to treat limitations on the Government's waiver of sovereign immunity as jurisdictional. *Beazer East*, 525 F.3d at

17

### 3. "Intertwined with the Merits"

Subrogees invoke the principle that " 'where the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a [f]ederal cause of action, the proper course of action for the district court . . . is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case.' " *Cohen v. Kurtzman*, 45 F. Supp. 2d 423, 428–29 (D.N.J. 1999) (quoting *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). This idea runs through numerous cases that classify issues as either jurisdictional or relating to the merits. *See, e.g.*, *Mortensen*, 549 F.2d at 890 (contrasting antitrust claims from "other claims whose jurisdictional bases are not as intertwined with their merits").

Courts differ on what it means for jurisdiction to be intertwined with the merits. Some focus on overlapping issues of proof. *See, e.g.*, *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (treating the two-year statute of limitations on FTCA claims in 28 U.S.C. § 2401(b) as jurisdictional and stating that "[i]n this case the determinative jurisdictional *facts* also go directly to the merits" (emphasis added)). Other courts discuss whether elements of establishing jurisdiction and of a particular cause of action are overlapping in part rather than distinct. *See, e.g.*, *Crawford v. United States*, 796 F.2d 924, 929

261 n.9.

18

(7th Cir. 1986) (analyzing whether the issues of mental capacity and negligence overlapped or were "unrelated"). Still others define intertwined as when the elements of jurisdiction and a cause of action are completely coextensive. *See, e.g.*, *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990) ("The existence of plaintiff's cause of action depends on whether [the defendant] was acting within the course and scope of his employment. The pertinent inquiry will resolve both the question of subject matter jurisdiction and a necessary element of the tort claim.").[7] Our own approach to the meaning of "intertwined with the merits" most closely resembles the first path; the phrase is best understood as referring to overlapping issues of proof.

---

[7] A more clear-cut categorical definition of "intertwined with the merits" is also possible. As the Tenth Circuit Court of Appeals put it: "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). That definition might seem to apply to the FTCA, since § 1346(b)(1) grants federal courts jurisdiction and also allows plaintiffs to bring state-law causes of action, sounding in negligence and subject to various conditions, against the United States. But we think a better reading of § 1346(b)(1) separates the jurisdictional threshold requirements listed in that section from the true source of the cause of action, which is state tort law. *See supra* Section IV.A.

19

A split among our sister courts of appeals has emerged on the proper procedure for handling situations in which jurisdiction is intertwined with the merits. In some circuits, whether a Government employee was acting in the scope of his employment for purposes of an FTCA claim must be handled as a question of the merits in order to give plaintiffs the appropriate procedural safeguards (*e.g.*, having a plaintiff's allegations assumed as true). *See Montez v. Dep't of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004) ("[W]e follow our general rule in holding that a jurisdictional attack intertwined with the merits of an FTCA claim should be treated like any other intertwined attack, thereby making resolution of the jurisdictional issue on a 12(b)(1) motion improper."); *Lawrence*, 919 F.2d at 1529 (vacating and remanding for consideration under Rule 12(b)(1)); *see also Augustine*, 704 F.2d at 1079 (treating the administrative claim requirement of § 1346(b)(1) as relating too closely to the merits to be handled under Rule 12(b)(1)). Yet the Second Circuit Court of Appeals recently reached the opposite conclusion on how a scope-of-employment dispute should be handled procedurally in the FTCA context. In *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007), it held that "where a waiver of sovereign immunity does not apply, a suit should be dismissed under Fed. R. Civ. P. 12(b)(1) and not Fed. R. Civ. P. 12(b)(6) for failure to state a claim."

Our Court's approach has been to make disputes over the scope-of-employment requirement of 28 U.S.C. § 1346(b)(1) jurisdictional. *See Matsko v. United States*, 372 F.3d 556, 560

20

(3d Cir. 2004) (affirming dismissal of an FTCA claim "for lack of subject matter jurisdiction");[8] *cf. Gould Elecs. Inc. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000) (holding that the phrase "law of the place" in the sixth prong of § 1346(b)(1) is jurisdictional)*; see also Gotha v. United States,* 115 F.3d 176, 178–79 (3d Cir. 1997) (treating the discretionary function exception to the FTCA of 28 U.S.C. § 2680(a) as jurisdictional). This much accords with the approach of our Second Circuit colleagues. *See, e.g.*, *Gould*, 220 F.3d at 178 (noting our Court's agreement with the approach of *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (applying Rule 12(b)(1) to a § 1346(b)(1) claim)).

Yet we have also recognized, where jurisdiction is intertwined with the merits of an FTCA claim, that a district court must take care not to reach the merits of a case when

---

[8] One might question why we have analyzed our case's procedural issues in such detail given *Matsko*. Although decided under Rule 12(b)(1), *Matsko* contains *dicta* more appropriate to Rule 12(b)(6). *See* 372 F.3d at 560–61 (stating "even reading the facts in the light most favorable to [the plaintiff], as we are required to do" and "[t]aking [the plaintiff's] allegations as true"). Furthermore, Subrogees raised several arguments here that we did not address in *Matsko*, including the circuit split described above. Finally, the Supreme Court has admonished itself and other federal courts for being "less than meticulous" in classifying issues as jurisdictional or merits-based. *Arbaugh*, 546 U.S. at 511.

21

deciding a Rule 12(b)(1) motion. *Gould*, 220 F.3d at 178–79. Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations. Thus, when faced with a jurisdictional issue that is intertwined with the merits of a claim, district courts must demand " 'less in the way of jurisdictional proof than would be appropriate at a trial stage.' " *Id.* at 178 (quoting *Mortensen*, 549 F.2d at 892). In this way, we have acknowledged the concerns expressed above by the Courts of Appeals for the Fifth, Ninth, and Eleventh Circuits. But we have not gone so far as to treat the scope-of-employment issue, and the other conditions of § 1346(b)(1), as a question of the merits suitable for disposition under Rule 12(b)(6). Instead, along with the Second Circuit Court of Appeals, we have followed the basic approach of treating the conditions of § 1346(b)(1) as jurisdictional.

In sum, we adhere to our Court's practice of applying Rule 12(b)(1) when evaluating whether a plaintiff's claim has met the six conditions on the FTCA's waiver of sovereign immunity contained in § 1346(b)(1).[9] But we ensure that

---

[9] Judge Irenas would hold that the District Court should have handled the case under Rule 12(b)(6). In his view, the mere allegation that Staff Sergeant Lewis acted in the scope of his employment was enough for the District Court to exercise jurisdiction. He would reach the same result (dismissal) because the Government moved in the alternative under, *inter alia*, Rule 12(b)(1) or 12(b)(6).

22

defendants are not allowed to use Rule 12(b)(1) to resolve the merits too early in litigation. By requiring less of a factual showing than would be required to succeed at trial, district courts ensure that they do not prematurely grant Rule 12(b)(1) motions to dismiss claims in which jurisdiction is intertwined with the merits and could be established, along with the merits, given the benefit of discovery.

## C. The District Court's Application of Rule 12(b)(1)

In our case, the District Court was correct to treat the scope-of-employment issue as jurisdictional and decide it under Rule 12(b)(1). But it did not address the "intertwined with the merits" problem explicitly. Whether Lewis acted within the scope of employment might involve issues of fact that also pertain to the merits of Subrogees' tort claims. District courts in this context should ensure that less proof is required of a plaintiff on a Rule 12(b)(1) motion than would be required at trial. *See Gould*, 220 F.3d at 178; *Mortensen*, 549 F.2d at 892.

Nonetheless, we hold that the District Court applied the correct procedural rule, despite not making the above principle from *Mortensen* and *Gould* explicit in its analysis. The District Court's omission of the "less in the way of jurisdictional proof" standard from its opinion had no bearing on the result. There are here no factual disputes that are here relevant to determining subject matter jurisdiction. For example, "there is no issue that SSG Lewis's conduct occurred outside authorized time and

23

space limits of employment." Dist. Ct. Op. 5. Even if we took Subrogees' allegations in the amended complaint as true (which we need not do under Rule 12(b)(1)), there is no factual dispute that Lewis's actions occurred in his home—not at work. *See infra* Section V.A.

The District Court applied Rule 12(b)(1), with its attendant procedural consequences, properly. The Government made a factual attack on the existence of subject matter jurisdiction (in contrast to a facial attack that deals with the sufficiency of the pleadings). *See* 5B Wright & Miller, *supra*, § 1350, at 147–55. This placed the burden of persuasion on Subrogees. *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). The District Court was permitted to make factual findings, beyond the pleadings, that were decisive to determining jurisdiction. *Atkinson*, 473 F.3d at 514 ("If this is a factual attack . . . it is permissible for a court to review evidence outside the pleadings.").

Subrogees contend that the District Court erred as a matter of law by prematurely ruling, prior to discovery, that Lewis was not acting within the scope of his employment. However, the Court may dismiss for lack of subject matter jurisdiction at any time, regardless whether the moving party has filed an answer or the opposing party had an opportunity to conduct discovery. *See Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 200 (3d Cir. 1990); Fed. R. Civ. P. 12(h)(3). Moreover, the Court gave

24

Subrogees ample opportunity to be heard on the jurisdictional issue. *See Berardi*, 920 F.2d at 200–01; 5B Wright & Miller, *supra*, § 1350, at 206. After the Government's motion, Subrogees filed an opposing brief, the Government filed a reply brief, and Subrogees filed a surreply brief. Thus, the Court did not grant the Government's Rule 12(b)(1) motion too early in the litigation.

## V. Analysis

We discuss first Subrogees' claims regarding whether Army recruiter Staff Sergeant Lewis was acting within the scope of his employment. Secondly, we address Subrogees' claims based on the actions of Lewis's supervisor, Sergeant Albrecht, and the Army as a whole.

## A. Lewis's Actions Were Outside the Scope of Employment

The " 'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit.' " *Meyer*, 510 U.S. at 475 (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)) (alteration in original). Here, as described above, the "terms of the United States' consent" are specified in the FTCA. For convenience, we repeat that the FTCA provides that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . [for] personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government *while acting*

25

*within the scope of his office or employment.*"   28 U.S.C. § 1346(b)(1) (emphasis added).

In ascertaining whether sovereign immunity was waived and if it had jurisdiction, the District Court correctly looked to Pennsylvania law to determine whether Lewis's actions were within the scope of his employment. *See id.* (waiving sovereign immunity "where the United States, if a private person, would be liable to the claimant *in accordance with the law of the place where the act or omission occurred*" (emphasis added)).   To answer such scope-of-employment questions, we have applied the closely related doctrine of *respondeat superior* (which determines when employers will be held liable for the actions of their employees) under Pennsylvania law, rather than using a federal definition.   *See McSwain v. United States*, 422 F.2d 1086, 1088 (3d Cir. 1970) ("Although the traditional doctrine of respondeat superior may not be appropriate to the relationship between military personnel and the armed forces, we are constrained by legislative mandate to apply this concept.").

Pennsylvania has adopted the Restatement (Second) of Agency's definition of conduct within the scope of employment. *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000) (citing *Butler v. Flo-Ron Vending Co.*, 557 A.2d 730, 736 (Pa. Super. Ct. 1989)); *see also Shuman Estate v. Weber*, 419 A.2d 169, 173 (Pa. Super. Ct. 1980).   Under Pennsylvania law, " 'conduct is within the scope of employment if, but only if: (a) it is the kind [the employee] is employed to perform; (b) it occurs

26

substantially within the authorized time and space limits[; and] (c) it is actuated, at least in part, by a purpose to serve the master.' " *Brumfield*, 232 F.3d at 380 (quoting Restatement (Second) of Agency § 228) (first alteration in original). The District Court concluded that Lewis's conduct was outside the scope of his employment because it occurred in an unauthorized time and space. In reaching this conclusion, the Court looked to Army regulations prohibiting Armstrong from staying at Lewis's apartment and Albrecht's direct order to Lewis not to allow Armstrong to do so.

On appeal, Subrogees focus their efforts on the third factor defining the scope of employment. They allege that Lewis was motivated, at least in part, by his desire to serve the Army's recruiting goals when he allowed Armstrong to stay at his home. We have stated before that "the mere existence of a personal motivation is insufficient to relieve the employer from liability where the conduct also benefitted him and was within the scope of employment generally." *Id.* (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 783 (3d Cir. 1985)). In a sworn statement Lewis gave as part of an administrative disciplinary proceeding, he stated that he had concern as "a humane individual" about Armstrong's welfare if left on the streets. But Lewis also had a concern that Armstrong would not be able "to continue with pursuit[] of a career in the Army" if unable to stay near Pittsburgh to finish high school.

Despite the third factor supporting Subrogees' argument,

27

Lewis's actions fail to meet the first two factors of the scope-of-employment test. Because lodging recruits in one's home violates Army recruiting regulations, that action is not of the kind that Army employees are to perform; thus Lewis's actions do not meet the first factor. Moreover, as the District Court emphasized, Lewis's actions did not occur within authorized time and space limits. Albrecht specifically forbade Lewis to allow Armstrong to stay at his home, so any actions that Lewis took with respect to Armstrong at his home occurred at an unauthorized place.

For our Court to consider Lewis's actions to be within the scope of employment, all three factors must be satisfied. Because the first and second factors are not close to being met here, we agree with the District Court's holding. As a result, Lewis's decision to bring Armstrong into his home temporarily does not fit within the scope of employment needed to invoke the Government's waiver of sovereign immunity. The District Court properly concluded that it lacked jurisdiction over Subrogees' claims with respect to Lewis's actions.

## B. Albrecht's and the Army's Actions Do Not Fit Within the FTCA's Waiver of Sovereign Immunity

Subrogees also argue that regardless whether Lewis's conduct was within the scope of his employment, the Government may be held independently liable for its alleged acts of negligence. They contend that the Army did not train

28

Lewis adequately; pressured recruiters like Lewis to meet recruiting goals, endangering society at large in the process; did not conduct a sufficient background check of Armstrong; and, acting through Albrecht, failed to follow up in enforcing its regulations prohibiting recruiters from giving lodging to recruits. We begin with the last claim first.

### 1. Albrecht

Subrogees' claim about failing to enforce regulations centers on the interaction between Albrecht and Lewis. Subrogees contend that Albrecht's admonition to Lewis was not enough. As Lewis's supervisor, they argue, Albrecht had a duty to follow up with Lewis and ensure that he did not allow Armstrong to stay at his home. Albrecht's omission, in their view, constituted negligent supervision of his subordinate, Lewis.

In support of their argument, Subrogees cite *Sheridan v. United States*, 487 U.S. 392 (1988). In that case, an off-duty and very drunk serviceman left the Bethesda Naval Hospital with a rifle and ammunition. Prior to leaving the hospital he fought with three other Naval corpsmen who unsuccessfully tried to subdue him. After the serviceman fled, the corpsmen never alerted authorities that a drunken serviceman was wandering about with a rifle. The serviceman then fired shots at a car, injuring a passenger inside it. *Id*. at 395. The Government argued the serviceman had committed an

intentional tort. Claims stemming from intentional torts generally are excluded from the Government's waiver of sovereign immunity under 28 U.S.C. § 2680(h). It states that § 1346(b)(1)'s waiver of sovereign immunity does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights," with certain exceptions for investigative or law enforcement officers. The Government cannot take advantage of this so-called "assault and battery exception" to its waiver of sovereign immunity in our case because "the exception only applies in cases arising out of assaults by federal employees." *Sheridan*, 487 U.S. at 400 (citing *Panella v. United States*, 216 F.2d 622 (2d Cir. 1954) (Harlan, J.)). Armstrong, the assailant in our case, was an Army recruit but does not qualify as a government employee.

Because the plaintiffs in *Sheridan* sought to sue for the Government's negligence in "fail[ing] to prevent [the serviceman's] use of a rifle," *id.* at 395, and not alerting other security authorities, the Court held that the intentional tort bar to waivers of sovereign immunity did not apply, *id.* at 403. The Government there was deemed to have waived its sovereign immunity to harm caused by its drunk serviceman-employee. Though that immunity normally remains where an employee acts intentionally, "the negligence of [the corpsmen] who allowed a *foreseeable* assault and battery to occur may furnish a basis for Government liability that is *entirely independent* of

[the drunk serviceman's] employment status." *Id.* at 401 (emphases added). Naval-base regulations about firearm safety and the corpsmen's decision to take the drunk serviceman into their care were two specific sources of the Government's independent negligence. *Id.* at 401. To allow someone in the serviceman's condition, armed with a rifle, out of the corpsmen's care courted foreseeable trouble. Thus, the Government had waived its sovereign immunity and the plaintiffs' case could go forward. *Id*. at 403.

*Sheridan* effectively represents an exception to an exception to an exception to a general rule. The general rule is sovereign immunity: the Government cannot be sued. The FTCA creates an exception to that rule by waiving sovereign immunity. That waiver of sovereign immunity comes with conditions (such as the scope-of-employment requirement of § 1346(b)(1)) and exceptions (such as the assault-and-battery exception of § 2680(h)). But *Sheridan* established that claims of independent negligence committed by Government employees are not barred by the assault-and-battery exception.

Subrogees' claims in this case, however, do not fall under the holding of *Sheridan*. To begin, the harm here was not foreseeable. To repeat, the corpsmen in *Sheridan* knew danger lurked if they allowed a drunk serviceman with a loaded rifle to leave hospital grounds. But in our case Lewis knew of no obvious danger in taking in a recruit who had passed background checks. And Lewis's supervisor (Albrecht)

31

likewise knew of no obvious danger that Lewis would defy his order that Lewis not take Armstrong into Lewis's home.

Moreover, Subrogees' claims with regard to Albrecht's conduct are not "entirely independent" of Lewis's status as a government employee. *Id.* at 401. Independent negligence in this context means negligence irrespective of an employment relationship. *See id.* at 397–98. Negligent supervision claims like Subrogees' claims concerning Albrecht, on the other hand, are rooted in supervisor-supervisee relationships at work; they relate closely to the supervisee's (in our case, Lewis's) employment status.[10] Unlike the corpsmen in *Sheridan*, whose alleged negligence had nothing to do with the drunk serviceman's employment relationship with the Navy, *see id.* at 401, Albrecht's allegedly negligent supervision of Lewis had everything to do with Lewis's employment relationship with the Army. Albrecht's only alleged connection to the shooting results from Lewis's status as his subordinate.

---

[10] The Supreme Court recognized in *Sheridan* that negligent supervision claims are not covered by the independent negligence theory on which the plaintiffs relied in that case. *See* 487 U.S. at 397 (defining claims of independent negligence as claims "[w]here no reliance is placed on negligent supervision or respondeat superior principles") (quoting the dissenting judge in the Fourth Circuit Court of Appeals' opinion under review, *Sheridan*, 823 F.2d 820, 824 (4th Cir. 1987) (Winter, C.J., dissenting)).

For these reasons, Subrogees' claim with regard to Albrecht's actions must fail for lack of subject matter jurisdiction.

### 2. The Army

Subrogees claim that the Army failed to train Staff Sergeant Lewis adequately. We view this as essentially a claim of negligent supervision of Lewis by the officers who trained him, rather than an independent claim of negligence analogous to that in *Sheridan*. The claim hinges on Lewis's employment status as an Army recruiter. But plaintiffs under the FTCA cannot use a negligent supervision claim to circumvent the scope-of-employment condition of § 1346(b)(1). They must allege truly independent negligence, analogous to the naval-base safety regulations and "voluntar[y] undertaking to provide care to a person who was visibly drunk" that were at issue in *Sheridan*. 487 U.S. at 401. They did not do so here.

Subrogees also allege that the Army's recruiting policies involve pressuring recruiters to meet goals, to the detriment of society at large. Because those policies are embodied in decisions of Army officials, Subrogees' claims must fail under the discretionary function exception of 28 U.S.C. § 2680(a) (specifying that the provisions of the FTCA "shall not apply to" "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation . . . or based upon the exercise or

33

performance [of] a discretionary function"). Statutes such as 10 U.S.C. § 513 require the Army to engage in recruiting. *Cf. Matsko*, 372 F.3d at 558 n.6 (stating in a *dictum* that claims "for (1) failure to properly train and supervise or (2) for negligent hiring" would fall outside of the FTCA because of § 2680(a), had those claims not been waived in that case).

Finally, Subrogees claim that the Army failed to conduct a sufficient background check on Armstrong. Lewis did the background check, but Subrogees style this claim as one of independent negligence on the part of the Army. To make sense of this, we must take Subrogees to allege the Army's background-check criteria are insufficient as a matter of policy. But this claim alsoruns afoul of the discretionary function exception. The Government has not waived sovereign immunity for the benefit of plaintiffs seeking to challenge the Army's background-check policies and practices.

Section 2680(a) is an explicit exception to the FTCA's waiver of sovereign immunity. Thus, though the District Court did not address the Army's independent negligence in its opinion, we also affirm the dismissal of Subrogees' claims under this theory for lack of subject matter jurisdiction.

\* \* \* \* \*

For the reasons stated, the District Court lacked subject matter jurisdiction over Subrogees' claims, and we thus affirm

34

the District Court's dismissal under Rule 12(b)(1).