**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3816
_____

JOSEPH SCOTT,
                                                Appellant

v.

JOHN MANENTI; JOSEPH NORWOOD;
MARK A. KIRBY; RUBEN B. MORALES;
MARILYN ANGUD; GENERAL COUNSEL;
UNITED STATES

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-15-cv-07213)
District Judge:  Honorable Jerome B. Simandle

_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or
Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
June 6, 2019

Before:  CHAGARES, RESTREPO and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: July 30, 2019)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Pro se appellant Joseph Scott appeals from the District Court's order granting summary judgment in favor of several defendants in an action that Scott brought pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). For the reasons discussed below, we will summarily affirm.

I.

Because we write primarily for the parties, we will recite only the facts necessary for our discussion. Scott is a federal prisoner who was previously incarcerated at FCI Fairton in New Jersey. In September 2015, he filed a complaint in the District Court alleging that the defendants violated his Eighth Amendment rights by mistreating an injury to his shoulder. The District Court screened the complaint and dismissed many of the claims for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B)(ii). The District Court permitted the claims against Dr. Manenti and Dr. Morales to proceed. Scott then filed several motions to amend his complaint. The District Court denied the majority of those motions, but the District Court permitted Scott to add a claim for medical malpractice against the United States under the Federal Tort Claims Act (FTCA), see 28 U.S.C. §§ 1346, 2671–80.

After discovery, the remaining defendants moved for summary judgment. The undisputed facts in the record showed that Dr. Morales was the Clinical Director at FCI Fairton and that Dr. Manenti was the Northeast Regional Medical Director. In October

2

2013, Scott first sought medical care for pain that he was experiencing in his shoulder. A nurse practitioner examined Scott and recommended an X-ray. Dr. Morales co-signed the recommendation, and an X-ray was conducted in November 2013. The findings were negative. In February 2014, Scott complained that he was still experiencing pain in his shoulder. A nurse practitioner examined Scott, observed that he had a normal range of motion, and prescribed pain medication and rest. Scott next visited the prison's health services in August 2014 because his shoulder was still not improving, and in October 2014, he requested an MRI. A physician's assistant examined Scott and recommended an orthopedic consultation. Dr. Morales agreed and co-signed the recommendation. Scott was examined by an orthopedist, Dr. Sarkos, in January 2015. Dr. Sarkos found that Scott had a possible rotator cuff tear and labral tear in his shoulder. Dr. Sarkos initially recommended treatment with a cortisone shot. After Scott was re-evaluated in March 2015, Dr. Sarkos recommended an MRI.

Dr. Morales forwarded the MRI recommendation to the Regional Medical Office, which denied the request in June 2015 because Scott had not met the physical therapy requirements. Dr. Manenti, the secondary reviewer, agreed with this determination. In August 2015, Scott was provided instructions for completing the necessary physical therapy. In September 2015, Scott's shoulder still had not improved after completing the therapy, and Dr. Morales co-signed a recommendation to provide Scott with an MRI. In November 2015, the request was approved. The MRI was performed in January 2016. In

3

March 2016, after reviewing the results of the MRI, Dr. Sarkos recommended surgery. Dr. Morales co-signed a request for a consultation with a surgeon and submitted a request for surgery in May 2016. Scott had shoulder surgery in August 2016.

The parties disputed whether the medical care provided to Scott was timely and whether it met the applicable professional standard of care. Scott provided an affidavit from Nurse Monica Scott, R.N., M.S.N., who opined that Scott's treatment deviated from the standard of care. The defendants provided an expert report from Dr. Ian Blair Fries, a licensed physician, who opined that the applicable standard of care was met.

The District Court granted summary judgment in favor of Dr. Morales, Dr. Manenti, and the United States. This appeal ensued.

## II.

We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's dismissal order is plenary, and we review its determination that Scott failed to state a claim using the same standard that we use for Fed. R. Civ. P. 12(b)(6) dismissals. See Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

We exercise plenary review over the District Court's order granting summary judgment. See Kaucher v. County of Bucks, 455 F.3d 418, 422 (3d Cir. 2006).

4

Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party and drawing all inferences in favor of that party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Kaucher, 455 F.3d at 422–23. We may summarily affirm "on any basis supported by the record" if the appeal fails to present a substantial question. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam); Third Circuit LAR 27.4 and I.O.P. 10.6.

### III.

To succeed on an Eighth Amendment medical needs claim, "a plaintiff must make (1) a subjective showing that 'the defendants were deliberately indifferent to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (alteration in original) (quoting Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)).[1] Prison officials can "act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'" Id. (quoting Estelle v. Gamble, 429 U.S. 97, 104–05 (1976)). But "mere disagreement as to the proper medical treatment" is insufficient to support an Eighth Amendment claim. Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Thus,

---

[1] The parties do not dispute that Scott's medical needs were serious. See Atkinson v. Taylor, 316 F.3d 257, 266 (3d Cir. 2003) ("this Court has defined a medical need as serious if it has been diagnosed by a physician as requiring treatment").

"when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." Pearson, 850 F.3d at 535 (citing Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")).

Here, the District Court properly dismissed the Eighth Amendment claims against Dr. Angud, Director Norwood, Warden Kirby, and the BOP General Counsel. Scott failed to allege that Dr. Angud was personally involved in the treatment of his shoulder, let alone that Dr. Angud acted with deliberate indifference. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable). Similarly, Scott failed to allege that Director Norwood, Warden Kirby, or the BOP General Counsel had any reason to believe that the prison doctors or their assistants were mistreating Scott. See Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-medical prison official is not charged with deliberate indifference "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner").

The District Court's order granting summary judgment in favor of Dr. Manenti and Dr. Morales on the Eighth Amendment claims was also proper, as Scott failed to produce any evidence that these defendants acted with deliberate indifference. The undisputed facts showed that Dr. Manenti and Dr. Morales consistently exercised their

6

professional judgment during their treatment of Scott's shoulder injury. See Brown, 903

F.2d at 278. Scott's argument—that the defendants should have provided him with an

MRI and surgery sooner, rather than first prescribing a course of pain treatment and

physical therapy—constitutes "mere disagreement as to the proper medical treatment."

Lanzaro, 834 F.2d at 346.[2]

    We also agree with the District Court's determination that the United States was

entitled to summary judgment on Scott's FTCA claim.[3] FTCA claims are generally

governed by the substantive tort law of the state where the acts or omissions occurred, in

this case, New Jersey. See Lomando v. United States, 667 F.3d 363, 372–76 (3d Cir.

2011). To establish medical malpractice under New Jersey law, "a plaintiff must present

expert testimony establishing (1) the applicable standard of care; (2) a deviation from that

standard of care; and (3) that the deviation proximately caused the injury." Lomando,

667 F.3d at 379 (quoting Gardner v. Pawliw, 696 A.2d 599, 608 (N.J. 1997) (citations

omitted)). New Jersey law generally requires "the challenging expert to be equivalently-

---

[2] We note that Scott provided an affidavit, from Nurse Scott, stating that his treatment deviated from the professional standard of care. But, as discussed in more detail below in the context of Scott's FTCA claim, Nurse Scott's affidavit did not provide evidence that would support a finding that Dr. Manenti or Dr. Morales "so deviated from professional standards of care that it amounted to deliberate indifference." Pearson, 850 F.3d at 541 (quotation marks and citation omitted).

[3] The District Court did not abuse its discretion in denying Scott leave to amend his complaint to add FTCA claims against the individual defendants. See CNA v. United States, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA."); Lorenz v. CSX Corp., 1 F.3d 1406, 1413 (3d Cir. 1993).

7

qualified to the defendant." Id. (quoting Ryan v. Renny, 999 A.2d 427, 436 (N.J. 2010));

see also id. at 374 (discussing United States' liability under FTCA for tortious conduct of

its employees). Here, Nurse Scott's affidavit was insufficient to establish the applicable

standard of care because she is not equivalently-qualified to the United States'

employees—Dr. Manenti and Dr. Morales—who allegedly deviated from that standard.

See Meehan v. Antonellis, 141 A.3d 1162, 1173 (N.J. 2016) (in cases against general

practitioners, "[t]he expert or affiant must be a licensed physician.") (citing N.J. Stat.

Ann. § 2A:53A–41).[4] Therefore, Scott failed to present any admissible expert evidence

to establish the applicable standard of care, and the United States was entitled to

summary judgment on the FTCA claim.[5]

For the foregoing reasons, we will summarily affirm the District Court's

judgment. See 3d Cir. L.A.R. 27.4; I.O.P. 10.6.

---

[4] Scott did not provide any support for his argument that "exceptional circumstances" permit a deviation from the statutory requirement of a like-qualified professional or that he met the good faith or substantial compliance exceptions under New Jersey law. See Meehan, 141 A.3d at 1167.

[5] While this case involved evidence from experts, the District Court did not abuse its discretion in denying Scott's motions for appointment of counsel. See Tabron v. Grace, 6 F.3d 147, 158 (3d Cir. 1993). The District Court identified the appropriate considerations before concluding that it was unnecessary to appoint counsel because Scott had shown a sufficient ability to present his case. See id. at 155–58.