Alexander Del Giorno, J.
This is a claim to recover for work, labor and services performed by claimant and for materials furnished by it, pursuant to the terms of a contract entered into between claimant and the State, which contract was cancelled by the State during its performance by claimant.
The contract was for the rehabilitation of the Spillway, walls and other miscellaneous work at New London, and work thereunder was commenced by claimant on August 28, 1961. In preparation for the project, claimant transported from Albany to New London concrete forms, bars, rip-rap, back hoe, compressor, storage shack and office shack.
Prior to the execution of the contract, as testified by Mr. Earl W. Scothon, associate civil engineer in charge of canal operation under the Department of Public Works, an inspection was made of the whole system, and damage at the Spillway was noted. Mr. Scothon testified that usually concrete deteriorates on the outside, remaining firm on the inside. Using a hammer, *1000 he tapped from the outside, finding that there was no indication the concrete had deteriorated on the inside, and that consequently there could be rehabilitation. He stated that there are better ways to determine the conditions, such as the use of test borings, but that these borings are very expensive and were not used in this instance. During the course of the work involved herein, it was found that contrary to the normal situation, the concrete was weaker on the inside than it was on the outside. The engineer ascribes this situation to the use of inferior concrete in the first instance, although he admitted that the Spillway had existed since 1912. He testified that although he had employed this hammer test in five or six previous operations along the system, this was the first time the test proved inaccurate. On September 25, 1961, he notified the claimant to stop work because the hazardous condition of the Spillway made it inadvisable to continue. Claimant agreed to stop work temporarily, but asked for a letter confirming the instruction to stop. By letter of September 26, 1961, of the Department of Public Works, by Henry A. Cohen, director, claimant was ordered to stop work and notified that the contract was can-celled as of September 27, 1961 on the ground that the best interests of the State would be so served. The State later planned reconstruction of the project.
The State conceded that claimant was honest and did good work under the contract.
For work actually performed, materials furnished, delay time, moving on job, moving and holding EFCO forms, closing and moving from the job and general job overhead, claimant demands payment of $11,791.45, less $3,131.32 paid by the State, or a total of $8,660.13. Estimate No. 1, dated December 1, 1961, shows the amount of the contract to have been $22,825, with a percentage of completion of 15.24, or a total of $3,479.25, less 10% retained, or $347.93, leaving a balance of $3,131.32. Estimate No. 2, dated August 23, 1962, shows the amount of the contract to have been $3,479.25, percentage of completion 100% by termination, or a total of $3,479.25, less payment of $3,131.32 with a balance due of $347.93. The final estimate was issued on January 8,1963. A check for the latter amount dated January 10,1963 was sent by State to claimant, who has retained it, having neither deposited nor cashed it.
In its notice of intention, filed January 19, 1963, claimant alleges that the contract “ was terminated by the State of New York, Department of Public Works, effective September 27, 1961 ” and “ that the amounts set forth in said Alteration No. 1 and Final Estimate both are inadequate to’ compensate the *1001 claimant for its loss resulting from said termination of its contract.” Damages were demanded in the sum of $12,500. The claim, filed September 19, 1963, more than eight months after accrual, alleges that ‘ ‘ the aforesaid cancellation of claimant’s contract was a breach of contract by the State of New York and claimant thereby was illegally and wrongfully prevented from fulfilling said contract to its loss and damage.” Damages were demanded in the sum of $12,500. ®
The State contends that the claim must be dismissed because it was filed more than six months after accrual and sets forth a different cause of action from that asserted in the notice of intention. The notice of intention, timely filed 11 days after accrual of the claim, was sufficient to give the officers of the State prompt notice of the damages and the surrounding circumstances in order that the matter might be investigated and the State’s liability determined. A substantial compliance with the statute is all that is required. If the claim or notice of intention is technically imperfect or inaccurate in some respects but is sufficiently definite to inform the officers of the State of the time and cause of claimant’s injuries or damages, it should be upheld. The only statutory distinction between the notice of intention and the claim itself is that in the former it is unnecessary to allege the items of damage and the amounts claimed. (Chalmers & Son v. State of New York, 271 App. Div. 699, affd. 297 N. Y. 690; Emanuele v. State of New York, 43 Misc 2d 135; Fraser v. State of New York, 26 Misc 2d 992.) The court holds that the notice of intention as filed contains all the items required to be stated in a claim under the provisions of section 11 of the Court of Claims Act and constitutes substantial compliance with that section so far as the contents of a claim are concerned. The court will deem the notice of intention as a claim, and will deem the claim, filed within two years of the date of accrual (Court of Claims Act, § 10), as an amendment which under all of the circumstances is not inconsistent with the notice of intention.
The State asserts also that claimant, by the terms of the contract, released its claim when it accepted the last payment on the contract, and that the failure of the contractor to reject the check can be construed as an acceptance of the final payment. In support of its argument, the State cites Brandt Corp. v. City of New York (14 N Y 2d 217) and Buffalo Elec. Co. v. State of New York (14 N Y 2d 453). In both of those cases the contractors had accepted the last payment proffered and thereby were held to have released any claims they possessed. The instant case is distinguishable in that the final estimate was *1002 not executed and the check which was tendered as final payment was not cashed. Moreover, the fact that the notice of intention was filed within 11 days of the issuance of the final estimate is construed by the court to constitute rejection of the final payment, with the result that claimant cannot be held to have released its claim. The provisions of section 102 of the State Finance Law, cited by the State to the effect that a check still in the hands of a contractor may be cashed at any time within three years from the date of its making, thus do not apply, for the reason that the filing of the notice of intention is an affirmative act of rejection of the proffered check.
Section 3 of article XV, of the State constitution provides that 6‘ if, from any unforeseen cause, the terms of the contract shall prove to be unjust and oppressive, the superintendent of public works may, upon the application of the contractor, cancel such contract.” The State invokes this section as authority for its statement that “ the State has ample power to cancel any canal contract without responding in damages.” It is to be noted that no reference is made therein to the question of damages, and the cancellation, if any, is to be by the Superintendent upon the application of the contractor. This argument is rejected.
The State invokes also section 32 of the Canal Law as authority for the same proposition. The pertinent portion of that section reads as follows: 11 If the superintendent of public works shall determine that the work upon any contract for the improvement, maintenance or repair of the canal system is not being performed according to the contract or for the best interest of the state the execution of the work by the contractor may be temporarily suspended by the superintendent * * * Every contract for the improvement, maintenance or repair of the canal system, or a part thereof, shall reserve to the superintendent of public works the right to suspend or cancel the contract as above provided, and to complete the work thereunder or readvertise and relet same, as he may determine.” Nowhere in the quoted section is there any reference to the liability of the State for damages as a consequence of canceling the contract.
The contract provides at page 3E, that “ if, in the judgment of the Superintendent of Public Works, the work is not being-performed according to the contract or for the best interests of the State, the Superintendent of Public Works shall have power to suspend or stop the work under this contract while it is in progress and complete the same in such manner as will accord with the contract specifications and be for the best interests of the State ’ \
*1003 While it is true that under the terms of the contract the Superintendent has power to stop the work thereunder for the best interests of the State, it is equally true that if the work of the contractor was satisfactory up to the point of cancellation, the State must respond in damages for what has been performed by the contractor. The State is bound by its contracts just as an individual would be bound. Although it may violate them, it cannot repudiate their obligation. (McMaster v. State of New York, 108 N. Y. 542.) In the case of Lord v. Thomas (64 N. Y. 107,109) the court held that “ The State stands, in this respect, in the same position as an individual, and may at any time abandon an enterprise which it has undertaken, and refuse to allow the contractor to proceed * ® *. The State in the case supposed would violate the contract, but the obligation of the contract would not be impaired by the refusal of the State to perform it. The original party would have a just claim against the State for any damages sustained by him from the breach of the contract ”.
The principal question to be determined herein is whether the State made proper tests before the contract was entered into to determine the condition which brought about the termination of the contract by the State.
In adopting the use of hammer tapping, the engineer used what was the least effective method of discovering the condition of the concrete. Even though he had used this method in several prior operations, his finding that the concrete could be rehabilitated in this instance was based upon an inferior test. It is of no consequence that his experience had indicated concrete usually deteriorates on the outside and is firm within, whereas here the contrary later proved to be true. The use of test borings would have been much more efficacious and under the existing conditions should have been employed by the engineer. Thus the contract and estimates were not prepared with all practical accuracy. The State concedes that what occurred was in no way the fault of claimant, but would evade any liability simply upon the ground that a continuation of work on the contract was not in the best interest of the State in view of the fact that the contractor could not perform as originally anticipated. The court finds that the State was remiss in employing the method it used to test the condition of the concrete, and that claimant cannot be held responsible for this failure on the part of the State. Granting that the State had the right to cancel the contract upon discovery of the actual condition of the contract, nevertheless it must be borne in mind that claimant in good faith undertook expense and trouble in its preparation to *1004 commence work under the contract and to perform until the contract was cancelled by the State. The claimant should be compensated on the basis of expense incurred and work performed, rather than on the basis of the unit price established by the contract. The court cannot, however, allow claimant’s demand for profit on the job. While the method of testing was not the proper one to be used, it was nevertheless used honestly by the State and cannot be held to constitute misrepresentation.
In the case of Brandt Corp. v. City of New York (14 N Y 2d 217, 222, supra) the court stated that “ contractors who engage in construction work of the size here involved are a fairly sophisticated group, well aware, before they undertake contracts such as the present one, of the possibility of being required to do extra work and of the city’s need for finality and certainty in winding up its contracts.” Although it may be quite true that in contracts of the magnitude there involved contractors are sophisticated, the same cannot be said to be true in the instant case, where the contractor may have been naive. Some of the technicalities set up by the State in its dealings with a contractor of ordinary calibre may well act as a trap for the comparatively uninitiated. Experience would indicate that the difficulties herein might not have arisen had the claimant been more experienced in dealing with the State and had it known the law as well as the State’s attorney.
It is the thought of this court that technicalities raised by the State as against claimants such as the present one do not make for the maintenance of good will as between the State and its citizens, and it is hoped that changes may be effected in the statutes so that the aura of sanctity now attributed to the State in the face of numerous illogical provisions in its contracts may be better merited by the State.
The court awards the claimant on the basis of quantum meruit the sum of $9,480.97, represented as follows:
Work actually performed and materials furnished.... $6,079.82
Delay time....................................... 753.67
Moving material and equipment to and from the job... 1,857.48
Overhead job expense of foreman and engineer....... 790.00
Total........................................ $9,480.97
which, by reference to the bill of particulars accepted by both sides as the basis for estimating the claimant’s claim herein, will indicate that the court has eliminated overhead and profit as hereinabove stated, with interest thereon from January 8, 1963 to the date of entry of judgment herein.