OPINION OF THE COURT
Donald J. Corbett, Jr., J.
This claim arose out of a contract for the installation, including all labor and materials, of intrusion detection systems at State armories at various locations within the State of New York. The claim alleges breach of contract, seeking damages for part performance of said contract prior to its termination by the State, restitution for a bid deposit previously forfeited to the State under a putative predecessor contract, and finally, for deprivation of its reasonable and anticipated profits.
On or about March 27, 1980, claimant submitted a bid for a contract to be let by the Office of General Services of the State *662 of New York, for electrical work in installing intrusion detection devices at various State armories. Claimant was the successful low bidder and the contract documents were then prepared for execution. Claimant, having concededly failed to note the unequivocal contractual requirement that the installer of the subject equipment be listed by the Underwriter Laboratories, did not timely withdraw its bid and ultimately its bid deposit of $19,700 was forfeited to the State. Claimant vigorously contested this forfeiture. Initially, it was successful in a CPLR article 78 proceeding in Supreme Court, Albany County. However, that judgment was reversed (Matter of G & R Elec. Contrs. v Egan, 85 AD2d 191), and that reversal was affirmed by the Court of Appeals (57 NY2d 721). Further, in an order filed with the clerk of the Court of Claims on March 7, 1983, the Honorable Edward M. Murray dismissed the second cause of action herein, to wit, for restitution of the forfeited $19,700 bid deposit, noting, inter alia, that claimant was seeking a second day in court after the Court of Appeals had already affirmed the dismissal of the petition. The record herein reveals no appeal from Judge Murray’s order and the second cause of action is deemed dismissed.[1]
Since the original contract had not been executed, the State readvertised the project for public bid, issuing specifications therefor.[2] Claimant was once again the successful low bidder with a base bid of $149,000 plus a bid for alternate No. 1 at $68,967, for a total of $217,967. The contract was duly executed and filed on October 16, 1980. Claimant thereupon commenced performance under the terms of the contract. The State of New York, however, then became aware that the specifications issued for the instant contract only contained six of the original eight addenda (see, n 2, supra). The State *663 became aware that the missing addenda, Nos. 7 and 8, would have substantially affected the magnitude of the executed contract by possibly as much as 25%. The State then elected to terminate the instant contract effective December 23, 1980 "for the convenience of the State”, pursuant to the provisions of article 14 of the contract.[3] It is from this termination of the contract that claimant seeks recompense. To be sure, the record reveals that the State terminated the instant contract because it made a serious error in the proffered specifications and the executed agreement, and was forced to utilize the escape hatch of article 14.1. Article 14 of the contract, entitled "Termination of Contractor’s Employment for the Convenience of the State of New York”, reads in relevant part:
"The Director may terminate this Contract whenever in his judgement the public interest so requires by delivering to the Contractor a notice of termination specifying the extent to which performance of work under the Contract is terminated and the date upon which such termination becomes effective. Upon receipt of the notice of termination, the Contractor shall act promptly to minimize the expenses resulting from such termination. The State shall pay the Contractor the sum of: "(a) the costs actually incurred up to the effective date of such termination, plus
"(b) the cost of settling and paying claims arising out of the termination of work under subcontracts or orders exclusive of the amounts paid or payable on account of supplies or materials delivered or services furnished by the subcontractor prior to the effective date of the Notice of Termination of Work under this Contract, which amounts shall be included in the cost on account of which payment is made under (a) above.
"(c) the rate of profit and overhead on (a) and (b) as prescribed by this Contract for orders on contract provided, however, that if it appears that the Contractor would have sustained a loss on the entire Contract had it been completed, no profit shall be included or allowed under this subdivision (c) and an appropriate adjustment shall be made reducing the amount of the settlement to reflect the indicated rate of loss.” Any speculation as to the State’s motive in terminating the *664 agreement is not necessary as the record clearly establishes that such termination resulted from the negligent preparation of the second set of specifications and the contract. Claimant would have the court look beyond the language of article 14 to the motive of the State of New York in canceling. Claimant suggests that the termination was an unlawful and illegal breach of contract because it was more than merely for the convenience of the State but was to overcome an error. Thus, despite an absence of prior judicial interpretation of article 14, claimant would have this court find that such an illegal breach warranted greater damages than those specified in the termination article.
The first cause of action seeks recovery for actual costs incurred by claimant. Testimony and evidence educed at trial established that claimant incurred expenditures totaling $8,910 for the salaries and wages of two employees who worked on the project as well as a $500 expenditure for office work, for a total of $9,410. Proof at trial was insufficient to sustain the claim for $500 for storage, particularly as that item had been excluded from the revised breakdown of costs incurred, dated May 5, 1981. The State’s disingenuous suggestion that these costs had already been incurred as part of the claimant’s bid for the first contract, which of course was never executed and resulted in the forfeiture of claimant’s bid security therein, is without merit.
In the third cause of action claimant seeks overhead and profit it "reasonably anticipated” upon the full contract price, and it believes it is so entitled due to the unwarranted termination by the State, for implied purposes beyond its mere convenience. Further, as this court is apparently the first to examine a termination based solely upon the contractually reserved excuse of convenience, there is a dearth of prior judicial guidance.
There is some guidance however in Canal Law § 32, which allows the Commissioner of Transportation to terminate a contractor’s employment under a contract if the Commissioner shall determine that the work is not being performed for the best interest of the State. The Commissioner may cancel and readvertise and relet the work. In Anrad Constr. Corp. v State of New York (47 Misc 2d 998, 1003), there was a similar cancellation by the State. There the contractor was compensated on a quantum meruit basis and the court specifically rejected a demand for profit on the job (supra, at p 1004). Of *665 course, the court in Anrad (supra) did not have the benefit of article 14.1 (c) of the contract to help guide it.
The claim for lost or "anticipated” overhead and profit on the entire contractual amount must be rejected. In considering a claim for lost overhead and profit on a unit price contract, when the City of New York exercised its contractual right to eliminate the supplying of certain materials for which the contractor had expected overhead and profit, the claim was rejected (De Foe Corp. v City of New York, 95 AD2d 793, 794, appeal dismissed 66 NY2d 759). Similarly, in Del Balso Constr. Corp. v City of New York (278 NY 154, 161-162), where the City of New York contractually reserved the right to omit a portion of the work, so long as it did not alter the essential identity or the main purpose of the contract,[4] the contractor was not entitled to overhead and profit on the omitted portion (see also, Kinser Constr. Co. v State of New York, 204 NY 381, 394). Claimant herein is "an experienced bidder on State projects” (Matter of G&R Elec. Contrs. v Egan, 85 AD2d 191, supra) and thus was aware of article 14, setting forth the contractual reservation by the State of its right to terminate and the damages which would flow therefrom.
Claimant’s exhortation that the termination is beyond what might legitimately be considered "convenience”, and thereby impliedly justifying damages beyond those contemplated in article 14.1, cannot be sustained on the record. "Convenience” may be defined as the quality of being personally convenient or "suitable or well adapted to one’s easy action or performance of functions”, or the saving of trouble. (Oxford English Dictionary 934-935 [1984].)
Thus defined, and claimant offers no guidance to the contrary, the court would be hard pressed to find that the State’s motives for termination, because of its conceded error in the preparation of the specifications and contractual documents herein, fall outside our comprehension of the term "convenience”.
Therefore, claimant’s recovery under its third cause of action is limited to the application of article 14.1 (c), allowing overhead in the amount of 10% of the cost of labor and materials and 10% of that total for profit. Therefore, claimant is entitled to recovery on its third cause of action for overhead *666 in the amount of $941 and for profit in the amount of $1,035.10 or a total of $1,976.10.
Accordingly, it is the opinion of this court that the claimant has been damaged on its first cause of action in the sum of $9,410 and on its third cause of action it has been damaged in the sum of $1,976.10 for a total sum of $11,386.10, together with interest on said sum from December 23, 1980 to June 23, 1981, and from August 9, 1982 to the date of entry of judgment herein.
All motions made at trial and not heretofore ruled upon are now denied.

. In what might be characterized as a third attempted bite at the apple, claimant argues for inclusion of the loss of the prior bid deposit in its third cause of action, nominally described as one for anticipated overhead and profit. Notwithstanding that a prior loss already incurred could hardly be considered anticipatory, this court reaffirms its dismissal. Inasmuch as claimant had contended that the proof of damages exceeded the amount set forth in the third cause of action, such is not the case and its motion to amend the claim to conform to the proof is hereby denied.

. The purported specifications for the second contract contained modifications from the original, incorporating eight prior addenda, and adding another. It was educed at trial however that, although the parties utilized revised bid forms specifically relating to the modified specifications, the actual contractual documents and specifications upon which the bids were based were specifications for the original contract.

. The State tried again with bids opened on August 19, 1981. Specifications had been issued for a third time, including apparently all the previously contemplated work and some additional work. The low bidder, a different company, submitted a successful bid in the amount of some $331,991.

. It might well be argued that the termination here altered the essential identity of the contract. However, the contract was subsequently relet in essentially the same identity (n 3, supra).