**CAROLEY BRUNN, Individually, as Personal Representative of
SHERETT JAMES, deceased, and Next Friend of J.V.,
Appellant/Plaintiff
v.
JOEL DOWDYE and GOVERNMENT OF THE VIRGIN ISLANDS,
Appellees/Defendants**

S. Ct. Civil No. 2011-0085

Supreme Court of the Virgin Islands

October 11, 2013

CLIVE C. RIVERS, ESQ., Law Offices of Clive Rivers, St. Thomas, USVI, *Attorney for Appellant.*

BERNARD M. VANSLUYTMAN, ESQ., Solicitor General, St. Thomas, USVI, *Attorney for Appellee Government of the Virgin Islands.*

HODGE, *Chief Justice*; CABRET, *Associate Justice*; and SWAN, *Associate Justice.*

## OPINION OF THE COURT

(October 11, 2013)

CABRET, *Associate Justice.* Caroley Brunn appeals from the Superior Court's October 20, 2009 Opinion and Order, which *sua sponte* dismissed her claims against the Government of the Virgin Islands. For the reasons that follow, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In a May 9, 2008 Judgment and Commitment, the Superior Court adjudicated Joel Dowdye guilty of first-degree murder and numerous other charges stemming from the March 25, 2006, shooting death of his ex-girlfriend, Sherett James. At the time of the shooting, the Virgin Islands Police Department had employed Dowdye as a detective. On June 20, 2006, Brunn — James's mother — sent notice to the Government of her intention to bring suit for its "negligent selection" of Dowdye as a police officer, and its "negligent failure to provide the proper training and supervision" to Dowdye. (J.A. 79); *see* V.I. CODE ANN. tit. 33, § 3409(b). On October 31, 2007, Brunn filed a three-count complaint in the Superior Court, suing Dowdye for wrongful death and the Government for negligent hiring and retention, as well as the negligent training and supervision of Dowdye and other police officers.

The Government filed a motion for summary judgment on June 9, 2009, on the ground that the claims were barred by the Virgin Islands Tort Claims Act ("VITCA"). *See* 33 V.I.C. §§ 3401-3417. In this motion, the Government alleged that Brunn provided insufficient notice of her claim under 33 V.I.C. § 3409(b)-(c), and maintained that in any event the VITCA mandated dismissal of all claims against the Government because

its waiver of sovereign immunity[1] did not extend to an intentional killing, which it contended was outside the scope of Dowdye's employment. *See* 33 V.I.C. § 3408(a) ("the Government . . . hereby waives its immunity from liability . . . with respect to injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee . . . while acting within the scope of his office or employment"). In an August 14, 2009 Opinion and Order[2] that primarily addressed the Government's notice argument, the Superior Court dismissed Brunn's claims to the extent they related to the hiring, training, or retention of police officers other than Dowdye, on the grounds that the Government did not receive requisite notice of such claims under the VITCA, but allowed the claims to proceed as they related to the hiring, retention, training, and supervision of Dowdye himself.

On August 28, 2009, the Government filed a motion for reconsideration, arguing that the Superior Court misapprehended the law when it rejected its section 3408(a) argument. The Superior Court, in an October 20, 2009 Opinion and Order,[3] denied the motion for reconsideration as untimely,[4] but held that the requirements of the VITCA

---

[1] Although the Virgin Islands is not a sovereign entity in the same manner as a state, Congress has provided that "no tort action shall be brought against the government of the Virgin Islands or against any officer or employee thereof in his official capacity without the consent of the legislature." Revised Organic Act of 1954, § 2(b); 48 U.S.C. § 1541. The Virgin Islands Legislature later waived this grant of immunity to the extent set forth in the VITCA. 33

[2] Although signed by the judge on August 12, 2009, the Opinion and Order were not entered into the docket by the Clerk of the Superior Court until August 14, 2009. *See* V.I.S.CT.R. 5(a)(9) ("A judgment or order is entered . . . when it is entered in the docket in compliance with Superior Court Rule 49.").

[3] While signed by the judge on October 19, 2009, the Opinion and Order were not entered onto the docket by the Clerk of the Superior Court until October 20, 2009. *See* V.I.S.CT.R. 5(a)(9).

[4] Although not raised as an issue on appeal, we note that contrary to the Superior Court's holding, the Government did timely file its motion for reconsideration. As the Superior Court recognized, the Government's motion — which sought reconsideration of a non-final judgment — could only have arisen under Local Rule of Civil Procedure 7.3, applicable through Superior Court Rule 7, which imposed a ten-day period for filing the document. Pursuant to the calculation of time rules in effect at the time, intermediate weekends and holidays were excluded, meaning that August 28, 2009, constituted the tenth day for seeking reconsideration of the August 14, 2009 Opinion, since the four intervening weekend days should have been excluded. While the Clerk of the Superior Court's certified docket sheet indicates that the Superior Court issued an April 28, 2010 Order that may have amended the October 20, 2009 Opinion to remove this reference to untimeliness — which we cannot ascertain, given

are jurisdictional, and could be raised by the Superior Court *sua sponte*. The Superior Court reasoned that Dowdye had acted outside the scope of his employment when he killed James and, relying on case law interpreting the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, held that Brunn had failed to identify "negligence on the part of Dowdye's supervisors independent of their employment relationship with Dowdye" in her initial notice, denying the court of subject matter jurisdiction. (J.A. 108.)

Brunn filed a notice of appeal on November 5, 2009, which this Court docketed as S. Ct. Civ. No. 2010-0038. However, this Court, in a November 5, 2010 Order, dismissed that appeal for lack of jurisdiction because the wrongful death claim against Dowdye remained pending in the Superior Court. *See Brunn v. Dowdye*, S. Ct. Civ. No. 2010-0038, slip op. at 2 (V.I. Nov. 5, 2010). Ultimately, the Superior Court entered a default judgment against Dowdye on September 10, 2011.[5] On September 20, 2011, Brunn timely filed a second notice of appeal.

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). Because the Superior Court's September 10, 2011 Default Judgment resolved the last remaining claims between the parties, it constitutes a final judgment, and this Court now has jurisdiction to consider Brunn's appeal of the October 20, 2009 Opinion and Order.

## III. DISCUSSION

Brunn argues that the Superior Court erred in holding that Dowdye was not acting within the scope of his employment with the Virgin Islands

---

the parties' failure to include the Order in their Joint Appendix — we question whether such an order would have been effective, given that Brunn's first appeal of the October 20, 2009 Opinion and Order was still pending on that date. *See Williams v. People*, 58 V.I. 341, 350-51 (V.I. 2013) (explaining that the Superior Court lacks jurisdiction to amend the judgment appealed until the Clerk of the Supreme Court issues the mandate formally divesting this Court of jurisdiction). In any case, the Superior Court's error with respect to computation of time does not affect the disposition of this appeal.

[5] Dowdye did not appeal the Superior Court's September 10, 2011 Default Judgment, and has not filed an appellate brief or otherwise participated in this appeal.

Police Department at the time of James's murder. She further asserts that her June 20, 2006 notice to the Government complied with the requirements of the VITCA, and therefore the Superior Court erred in holding that it lacked subject matter jurisdiction over her negligent retention and supervision claims. We apply plenary review to the Superior Court's application of law, while the trial court's findings of fact are reviewed for clear error. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). Moreover, this Court exercises plenary review over questions relating to the Superior Court's subject matter jurisdiction. *Judi's of St. Croix Car Rental v. Weston*, 49 V.I. 396, 399 (V.I. 2008).

## A. Scope of Employment

Brunn, as her first issue on appeal, challenges the Superior Court's holding that Dowdye did not act within the scope of his employment when he murdered James. According to Brunn, the Superior Court erred by resolving this issue without providing her with "the opportunity to prove to the trier of facts whether Dowdye was acting within the scope of his employment" or to "put on evidence that this type of conduct is [commonplace]." (Appellant's Br. 15-16.) While Brunn seems to have misinterpreted the October 20, 2009 Opinion as granting summary judgment to the Government rather than dismissing her claims for lack of jurisdiction, we construe her claims as an argument that the Superior Court should have provided her with an opportunity to introduce evidence that Dowdye acted within the scope of his employment, rather than *sua sponte* raising and adjudicating the issue in the October 20, 2009 Opinion.

██ Prior to considering the merits of a matter before it, a court is obligated to examine whether it has subject matter jurisdiction over the dispute. *V.I. Gov't Hosp. & Health Facilities Corp. v. Gov't of the V.I.*, 50 V.I. 276, 279 (V.I. 2008). Assuming — without deciding — that the pertinent provisions of the VITCA are jurisdictional, the Superior Court correctly questioned whether the statute's requirements were satisfied. However, the Superior Court was also required to provide Brunn with an opportunity to respond to its concerns about its subject matter jurisdiction — including addressing whether these provisions even impose limits on

its subject matter jurisdiction.[6] Since the Superior Court *sua sponte* raised and adjudicated this issue in its October 20, 2009 Opinion, it committed error by depriving Brunn of her right to be heard. *Mendez v. Gov't of the V.I.*, 56 V.I. 194, 205 (V.I. 2012).

Nevertheless, the Superior Court's actions do not establish grounds for reversal. As we held in *Mendez*, the denial of the right to be heard in a civil case is subject to harmless error review. *Id.* at 205-06. First, we note that Brunn received an opportunity to respond to the Government's June 9, 2009 motion for summary judgment and August 28, 2009 motion for reconsideration, both of which asserted the same argument the Superior Court ultimately relied on to dismiss her complaint: that committing premeditated murder is outside the scope of a police officer's employment. While the question of whether an employee acted within the scope of employment is typically one of fact, "it becomes a question of law . . . when the facts are undisputed." *Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 48 Cal. Rptr. 2d 510, 907 P.2d 358, 362 (Cal. 1995) (holding that sexual assault was not within

---

[6] Several courts have construed at least some provisions of the VITCA as being jurisdictional in nature. *See, e.g., Speaks v. Gov't of the V.I.*, Civ. No. 2006-168, 2009 U.S. Dist. LEXIS 3565, *15-16 (D.V.I. Jan. 14, 2009) (unpublished) ("Timely compliance with the VITCA's notice requirement is a jurisdictional prerequisite to bringing suit on a plaintiff's tort claims." (citing *Delgado v. Gov't of the V.I.*, 137 F. Supp. 2d 611, 615 (D.V.I. App. Div. 2001))). Although courts have historically characterized statutes that codify waivers of sovereign immunity as jurisdictional, to date this Court has not used jurisdictional language to describe the VITCA or similar statutes. *See, e.g., In re Hartlage*, 54 V.I. 446, 450-52 (V.I. 2010); *Magens Point Resort Hotel v. Benjamin*, 58 V.I. 191 (V.I. Apr. 8, 2009) (unpublished). Moreover, both this Court and the Supreme Court of the United States have recognized in recent years that the term "jurisdictional" has often been misused, and that many provisions — even in statutes — that have previously been described as jurisdictional are claims-processing rules subject to waiver, or simply elements of the underlying cause of action. *See, e.g., Brooks v. Gov't of the V.I.*, 58 V.I. 417, 424-25 (V.I. 2013) (citing *Henderson v. Shinseki*, 131 S. Ct. 1197, 179 L. Ed. 2d 159 (2011)); *Tindell v. People*, 56 V.I. 138, 146 (V.I. 2012) (citing *United States v. Cotton*, 535 U.S. 625, 629, 122 S. Ct. 1781, 152 L. Ed. 2d 860 (2002)); *Brady v. Cintron*, 55 V.I. 802, 815 (V.I. 2011) (citing *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 130 S. Ct. 1237, 1244, 176 L. Ed. 2d 18 (2010)). Thus, whether the scope of employment provision found in section 3408(a) of title 33 constitutes a jurisdictional limit on the Superior Court's authority remains an unresolved question. Nevertheless, the parties have not briefed this issue and we need not resolve it in this appeal because the ultimate result would be the same, given that the same argument the Superior Court raised *sua sponte* — that the Government cannot be held liable for an intentional murder committed by one of its employees — had been previously asserted by the Government in its timely-filed motion for reconsideration.

scope of employment as a matter of law) (internal quotation marks and citation omitted); *see also Dora v. Achey*, 300 F. App'x 550, 551 (9th Cir. 2008) ("scope of employment determinations involve questions of fact; [but] when material facts are undisputed, . . . courts may decide scope of employment questions as a matter of law") (applying Arizona law). As the Government noted in its August 28, 2009 motion, Brunn states in her complaint that Dowdye (1) "repeatedly and in cold blood fired several shots into Sherett James' head, killing her," (2) "was found guilty of [her] murder," and (3) "acted with oppression and/or malice" when he "intentionally" shot her. (J.A. 2, 4.) And even if Brunn had not made these admissions in her complaint, the Superior Court could take judicial notice of the May 9, 2008 Judgment and Commitment, adjudicating Dowdye guilty of first-degree murder. *Mendez*, 56 V.I. at 205. Given these undisputed facts, Dowdye, as a matter of law, could not have acted within the scope of his employment when he killed James.[7] *See, e.g., Kyreacos v. Smith*, 89 Wn.2d 425, 572 P.2d 723, 724-25 (Wash. 1977) (holding that a police detective's first-degree murder conviction precluded any possibility of finding, in a subsequent civil case brought against the detective and the government, that the detective was acting within the scope of his employment); *Sandage v. Bd. of Com'rs of Vanderburgh Cnty.*, 897 N.E.2d 507, 514-15 (Ind. Ct. App. 2008) (holding that a murder committed by an inmate in a work-release program was not within the scope of employment because it was not in furtherance of any business interest of the employer); *Olson v. B&S Caring Associates, Inc.*, 271 A.D.2d 588, 706 N.Y.S.2d 440, 442 (App. Div. 2000) ("in committing the murder the aide acted outside the scope of his employment"); *see also* RESTATEMENT (THIRD) OF AGENCY § 7.07(2) ("An employee's act is not

---

[7] In her appellate brief, Brunn argues that, had she received an opportunity to be heard, she would have presented evidence that Dowdye was not off-duty when he shot James, that "he drove a police issued vehicle 24-hours a day," that "he used his police badge to [e]llicit information and . . . used his police issued revolver to commit the act," and that the police department lacks a use-of-force policy and does not discipline officers for use of excess force. (Appellant's Br. 15-16.) Brunn, however, could have provided the Superior Court with these materials when she opposed the Government's motions for summary judgment and reconsideration — or, to the extent discovery remained ongoing, requested additional time to respond, *see* FED. R. CIV. P. 56(e) — but did not do so. In any event, even if all of Brunn's proposed facts were accepted as true, none would negate the substantial case law that an intentional, premeditated murder is inherently outside the scope of Dowdye's employment as a police officer.

within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer."). Accordingly, the Superior Court did not err in holding that Dowdye's intentional murder of James was outside of the scope of his employment as a matter of law and dismissing Brunn's claim against the Government based on *respondeat superior*.

## B. Negligent Hiring, Retention, Supervision, and Training

Brunn also contends that the Superior Court should have permitted her to proceed under the alternate theory that Dowdye's supervisors acted within their scope of employment when they purportedly negligently hired, supervised, trained, and retained Dowdye. In dismissing this count, the Superior Court held that Brunn had failed to invoke the Government's waiver of sovereign immunity because she failed to "allege negligence on the part of a government supervisor independent of said supervisor's relationship with his tort-committing subordinate." (J.A. 107-08.)

In its holding, the Superior Court relied on the reasoning of the United States Court of Appeals for the Third Circuit in *CNA v. United States*, 535 F.3d 132, 149 (3d Cir. 2008). The Superior Court found that *CNA* — which interpreted the FTCA — was persuasive authority because the VITCA and the FTCA are "analogous." (J.A. 108); *see People v. Pratt*, 50 V.I. 318, 322 (V.I. 2008) (stating that when a local statute is known to be modeled after a federal statute, federal case law may be instructive when interpreting the local law). But the Third Circuit's reasoning in *CNA* relied entirely on *Sheridan v. United States*, 487 U.S. 392, 401, 108 S. Ct. 2449, 101 L. Ed. 2d 352 (1988), which in turn was an interpretation of the intentional tort exclusion to sovereign immunity contained in 28 U.S.C. § 2680(h). *See CNA*, 535 F.3d at 148-49 (quoting *Sheridan*, 487 U.S. at 401, in dismissing a negligent supervision claim for failing to allege negligence "entirely independent" of employment status). While the waiver of sovereign immunity found in 33 V.I.C. § 3408(a) is substantially identical to 28 U.S.C. § 1346(b),[8] *see McBean v. Gov't of*

---

[8] *Compare* 33 V.I.C. § 3408(a) ("the Government of the United States Virgin Islands hereby waives its immunity from liability and action and hereby assumes liability with respect to injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government of the United States Virgin Islands while acting within the scope of his office or employment, under circumstances where the Gov-

*the V.I.*, 19 V.I. 383, 386 & n.1 (V.I. Terr. Ct. 1983) (indicating that most of the VITCA is modeled after a New York statute, but that section 3408 is based on the FTCA), 28 U.S.C. § 2680(h) limits the scope of section 1346(b) by excluding "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights" from the waiver of immunity. 28 U.S.C. § 2680(h). No such intentional tort exclusion limits the extent of the Virgin Islands Government's waiver of immunity in section 3408(a), and therefore the *Sheridan* and *CNA* line of cases interpreting the scope of this exclusion are wholly inapplicable to our interpretation of the VITCA. Therefore, the Superior Court committed legal error in holding that Brunn's notice was insufficient to invoke the Government's waiver of sovereign immunity because it failed to allege " 'independent negligence' on the part of the employee's supervisor irrespective of their employment relationship." (J.A. 105.)

Despite this error, we may still affirm the Superior Court's dismissal of Brunn's negligence claims if this error was ultimately harmless. *See generally Brady v. Cintron*, 55 V.I. 802, 824-25 (V.I. 2011). In other words, we may affirm if Brunn's June 20, 2006 notice to the Government otherwise failed to comply with the requirements of the VITCA. The VITCA provides that "[n]o judgment shall be granted" in favor of "an executor or administrator of a decedent . . . surviv[ed by] . . . next of kin, for damages for a wrongful act, neglect or default, on the part of the Government by which the decedent's death was caused" unless the claimant files a claim, or gives written notice to the Government of her intention to file a claim, within ninety days of the appointment of an administrator or executor. 33 V.I.C. § 3409(b). This notice "shall state the time when and the place where such claim arose, the nature of same," and "shall be verified." 33 V.I.C. § 3410. Once the notice provisions are

---

ernment of the United States Virgin Islands, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."), *with* 28 U.S.C. § 1346(b)(1) ("[T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.").

satisfied, "the claim shall be filed within two years after the death of the decedent." 33 V.I.C. § 3409(b).

Brunn's notice to the Government stated in relevant part:

**NATURE OF CLAIM:**

On March 25, 2006, Joel Dowdye murdered Sherett James by shooting her, execution style, in the head. At the time of the murder, Joel Dowdye was employed by the Virgin Islands Police Department. As a result of this senseless tragedy, Caroley Brunn and [J.V.] has suffered and continue to suffer physical and emotional damages.

Accordingly, the purpose of this notice is to notify the Government of the Virgin Islands of my intention to file a claim against the Virgin Islands Police Department for its negligent selection of Joel Dowdye as a police officer for that Department as well as the Department's negligent failure to provide the proper training and supervision to Joel Dowdye.

(J.A. 79.) The Government argues that this was deficient because it did not state the nature of the claim, failing to "inform [the Government] of who is alleged to have negligently trained or supervised Dowdye, or how such neglect, if true, proximately resulted in James' death by Dowdye's intentional criminal act." (Appellee's Br. 16.)

 The Legislature enacted section 3410 in 1971, modeling it after section 11(b) of the New York Court of Claims Act.[9] When the Legislature borrows a statute from another jurisdiction, the local enactment is construed to mean what the highest court of that jurisdiction construed it to mean before the Legislature adopted it. *Tyson v. People*, 59 V.I. 391, 406 (V.I. July 18, 2013) (citing *Chinnery v. People*, 55 V.I. 508, 519 n.6 (V.I. 2011)). While there is little useful pre-1971 case law

---

[9] *Compare* 33 V.I.C. § 3410 ("The claim shall state the time when and the place where such claim arose, the nature of same, and items of damage or injuries claimed to have been sustained and the total sum claimed. The notice of intention to file a claim shall set forth the same matters except that the items of damage or injuries and the sum claimed need not be stated. The claim and notice of intention to file a claim shall be verified."), *with* N.Y. CT. CL. ACT § 11(b) ("The claim shall state the time when and place where such claim arose, the nature of same, the items of damage or injuries claimed to have been sustained and . . . the total sum claimed. . . . The notice of intention to file a claim shall set forth the same matters except that the items of damage or injuries and the sum claimed need not be stated. The claim and notice of intention to file a claim shall be verified . . . .").

from the New York Court of Appeals interpreting that state's statute, New York's intermediate appellate court has explained that the notice requirements are "not to hamper and harass the claimant but to give the officers of the State prompt notice of the damages or injuries and the surrounding circumstances in order that the matter might be investigated and the State's liability determined." *Harvey Chalmers & Son v. State*, 271 A.D. 699, 68 N.Y.S.2d 827, 830 (App. Div.), *aff'd*, 297 N.Y. 690, 77 N.E.2d 8 (1947) (affirming without opinion). The statute "does not require absolute exactness of expression but simply a statement of the matter referred to with sufficient definiteness to enable the State officials to make an investigation in order to determine if the claim should be adjusted without suit." *Id.* Furthermore, a "substantial compliance with the statute is all that is required. If the [notice] is sufficiently definite to inform the officers of the state of the time and cause of claimant's injuries or damages, it should be upheld." *Pickering v. Gov't of the V.I.*, 19 V.I. 271, 277 (D.V.I. 1982) (quoting *Anrad Construction Corp. v. State*, 47 Misc. 2d 998, 263 N.Y.S.2d 454, 458 (Ct. Cl. 1965)) (internal quotation marks omitted).

 Here, Brunn's notice failed to satisfy even this minimal standard. While it was not necessary for Brunn to "allege each of the elements necessary to survive a [motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure] nor provide a precise legal theory upon which recovery is sought," her notice was required to "set forth more than mere conclusory allegations of the Government's liability." *Gonzalez v. Stevens*, 19 V.I. 515, 518-19 (D.V.I. 1983). Brunn's notice stated her intention to bring a claim for negligent hiring, retention, supervision, and training, but it did not state a single action or omission by Dowdye's supervisors that gave rise to this claim. At the very least, the notice must provide a "description of the particular manner in which the [Government] was allegedly negligent." *Epps v. State*, 199 A.D.2d 914, 606 N.Y.S.2d 64, 65 (App. Div. 1993); *see also Morra v. State*, 107 A.D.3d 1115, 967 N.Y.S.2d 169, 171 (App. Div. 2013) (the Government "is not required to ferret out or assemble information that [the notice provision] obligates the claimant to allege" (internal quotation marks and citation omitted)); 62A N.Y. JUR. 2D *Government Tort Liability* § 295 ("a notice of intention . . . must contain some meaningful reference to the defect or wrongful actions by State officials that will allegedly give rise to liability"). In her complaint, Brunn alleged that the

Government negligently retained Dowdye after he was involved in a domestic violence incident in which he assaulted James. And while this allegation may support her negligence action,[10] Brunn did not indicate in her notice that this incident was the underlying factual basis of her claim. This failure to make any reference, let alone any meaningful reference, to the allegedly negligent actions of the Government did not afford the Government an opportunity to "make an investigation in order to determine if the claims should be settled without suit."[11] *Abdallah v. Callender*, 1 F.3d 141, 148, 28 V.I. 416 (3d Cir. 1993) (quoting *McBean*, 19 V.I. at 388) (internal quotation marks omitted).

Accordingly, despite the Superior Court's error in holding that Brunn's notice was deficient because it failed to allege "negligence on the part of Dowdye's supervisors independent of the[] employment relationship," this error was harmless due to Brunn's failure to allege any negligent action on the part of Dowdye's supervisors. Therefore, we affirm the Superior Court's dismissal under this theory of liability as well.

---

[10] This Court has yet to speak to the elements required to sustain claims of negligent hiring, training, retention, or supervision of an employee. We note that the United States District Court of the Virgin Islands has cited the RESTATEMENT (THIRD) OF AGENCY in setting out the elements of a claim for negligent hiring, retention, and supervision under Virgin Islands law. *See Vanderwall v. Marriott Ownership Resorts (St. Thomas), Inc.*, Civ. No. 2012-84, 2013 U.S. Dist. LEXIS 117764, *32 (D.V.I. Aug. 20, 2013). But, as we held in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (V.I. 2011), 1 V.I.C. § 4 — which formerly incorporated the Restatements into Virgin Islands law — was superseded by the creation of this Court, and the Restatements no longer constitute the rules of decision in Virgin Islands courts. *See Banks*, 55 V.I. at 979 ("this Court and — to the extent not bound by precedent, the Superior Court — may determine the common law *without* automatically and mechanistically following the Restatements" (citation omitted; emphasis added)). Nevertheless, because Brunn's notice of claim was not required to set out the elements of her negligence claims in order to satisfy 33 V.I.C. § 3410, but still failed to set forth the minimum required factual allegations to enable her claims to proceed, we do not need to decide here whether the Restatements — or another common law rule — govern negligent hiring, training, retention, or supervision claims in the Virgin Islands. *See generally Perez v. Ritz-Carlton (Virgin Islands), Inc.*, 59 V.I. 522, 529 n.5 (V.I. 2013).

[11] We note that this may prove to be a harsh rule, as often a claimant will not be aware of the exact nature of the Government's conduct within the ninety-day deadline. But if Brunn was not immediately aware of this domestic violence incident or its significance to her claim, she could have sought to amend her notice or file it beyond the ninety-day deadline pursuant to 33 V.I.C. § 3409(c).

## IV. CONCLUSION

For the foregoing reasons, we affirm the Superior Court's October 20, 2009 Order dismissing Brunn's complaint against the Government with prejudice.