IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

December 19, 2023 02:22 PM
SCT-Crim-2022-0115
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

## IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | | |
|---|---|---|
| **JIMMY DAVIS,** | ) | **S. Ct. Crim. No. 2022-0115** |
| Appellant/Defendant, | ) | Re: Super. Ct. Crim. No. 98/2020 (STX) |
| | ) | |
| v. | ) | |
| | ) | |
| **PEOPLE OF THE VIRGIN ISLANDS,** | ) | |
| Appellee/Respondent. | ) | |
| | ) | |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Douglas A. Brady

Considered: May 9, 2023
Filed: December 19, 2023

Cite as 2023 VI 16

**BEFORE:** **RHYS S. HODGE**, Chief Justice; **IVE ARLINGTON SWAN**, Associate Justice; and **RENEE GUMBS-CARTY**, Designated Justice.[1]

**APPEARANCES:**

**Howard L. Phillips, Esq.**
Andrew C. Simpson, P.C.
St. Croix, U.S.V.I.
   *Attorney for Appellant,*

**Ian S.A. Clement, Esq.**
Assistant Attorney General
St. Thomas, U.S.V.I.
   *Attorney for Appellee.*

## OPINION OF THE COURT

**HODGE, Chief Justice.**

---

[1] Associate Justice Maria M. Cabret is recused from this matter; the Honorable Renee Gumbs-Carty has been designated in her place pursuant to title 4, section 24(a) of the Virgin Islands Code.

¶ 1    Appellant Jimmy Davis appeals from the Superior Court's November 29, 2022 opinion and order nominally granting, but in effect denying, his motion for modification of bail (hereafter the "Bail Order"), as well as a second November 29, 2022 order denying his motion to transfer him from a detention facility on St. Thomas to a detention facility in St. Croix (hereafter the "Transfer Order").  For the reasons that follow, we reverse the Bail Order but dismiss Davis's appeal of the Transfer Order for lack of jurisdiction.

## I. BACKGROUND

¶ 2    On April 6, 2020, the People of the Virgin Islands charged Davis with numerous offenses stemming from the alleged rape of a minor in her home in St. Croix.  Davis appeared for his advice of rights hearing on April 8, 2020, before a magistrate judge, who set cash bail in the amount of $1,000,000.  On August 11, 2020, Davis filed a motion for modification of bail, which contended that the bail imposed at the advice of rights hearing had been excessive.  The People opposed this motion on August 17, 2020, on the grounds that Davis was a danger to the community and to witnesses, as well as a potential flight risk.  To support these assertions, the People noted that Davis had previously been arrested approximately 38 times and convicted for eight offenses, with many of those arrests occurring while he was on supervised release for other offenses, including the arrest in the instant case; had been involved in multiple high-speed car chases with the police, including at the time of his arrest in this case; had threatened witnesses with physical harm in connection with his other cases; and had a history of violating court orders.  The Superior Court held a hearing on the motion on November 16, 2020, and, apparently believing that Davis may have been detained in connection with other outstanding criminal matters, denied the motion without prejudice.

¶ 3    Davis filed a renewed motion for modification of bail on December 1, 2020, in which he

presented evidence reflecting that he was not presently detained in connection with any other matter and was currently incarcerated solely due to his inability to post the $1,000,000 bail set at the April 8, 2020 advice of rights hearing. The Superior Court held a hearing on the renewed motion on December 30, 2020, where the People orally stated that it continued to oppose modification of bail for the same reasons set forth in its August 17, 2020 opposition to the initial motion. After hearing arguments, the Superior Court orally denied the renewed motion, holding that the terms Davis proposed were wholly insufficient to assure his appearance at trial or to protect the community from physical harm. In issuing that decision, the Superior Court relied in part on a police report stating that Davis's grandmother—who lived next door to Davis's mother, his proposed third-party custodian—told the police that she will not allow him to live with her due to his behavior.

¶ 4     Davis filed another motion for modification of his bail on March 22, 2021. In this motion, Davis sought modification for the same reasons set forth in his previous motions, but submitted an affidavit from his grandmother averring that the statements attributed to her in the police report were false and that she has no fear or objection to Davis's presence. Again, the People did not submit a new response to this motion but advised the Superior Court that they continued to oppose modification of bail for the same reasons set forth in its August 17, 2020 opposition to Davis's original motion.

¶ 5     The Superior Court held a hearing on June 14, 2021, at which it orally denied the motion, again concluding that the terms proposed by Davis were insufficient to assure his future appearances or to protect the community. The Superior Court subsequently memorialized its denial of the motion in a written June 17, 2021 order.

¶ 6     Davis appealed the June 17, 2021 order to this Court, and the matter was ultimately heard

as part of the calendar of cases considered on October 12, 2021. Two days later, on October 14, 2021, Davis's court-appointed counsel—Robert Kuczynski, Esq.—filed an emergency motion with the Superior Court to withdraw as Davis's trial counsel, which the Superior Court granted in an October 15, 2021 order. Shortly thereafter, the Superior Court appointed Charles E. Lockwood, Esq. as Davis's court-appointed trial counsel; however, Attorney Lockwood subsequently filed a motion to withdraw, which the Superior Court granted. Over the course of the next six months, the Superior Court appointed four attorneys to represent Davis—Lee J. Rohn, Esq.; Kye Walker, Esq.; Shari D'Andrade, Esq.; Jerry H. Evans, Esq.—all of whom also were eventually permitted to withdraw. On March 18, 2022, Attorney Evans likewise moved to withdraw as counsel, but noted that Dwayne Henry, Esq. had agreed to be appointed in his place. The Superior Court granted the motion, and appointed Attorney Henry to represent Davis at trial.

¶ 7     On April 1, 2022, this Court issued an opinion which reversed the June 17, 2021 order due to the Superior Court failing to apply the correct legal standard, in that it appeared to presume the correctness of the release conditions set by the magistrate judge at the April 8, 2020 advice of rights hearing and in effect treated Davis's motion for modification of bail as if it were a motion for reconsideration. *See Davis v. People*, 76 V.I. 514 (V.I. 2022).

¶ 8     After this Court issued its April 1, 2022 opinion, the Superior Court issued an order setting a hearing on the March 22, 2021 motion for bail modification for May 24, 2022. However, Attorney Henry filed a motion to withdraw as counsel on May 4, 2022, which the Superior Court granted. Over the course of the next three months, the Superior Court would appoint—and later permit to withdraw—Michael J. Jurek, Esq., Scot McChain, Esq., Jeffrey B.C. Moorhead, Esq., and H.A. Curt Otto, Esq., as Davis's counsel. After Attorney Otto withdrew, the Superior Court issued an August 25, 2022 order appointing Howard Phillips, Esq., who remains Davis's court-

appointed counsel to this day.

¶ 9     On October 4, 2022, Davis, through Attorney Phillips, filed a motion requesting that the Superior Court order his transfer from a detention facility on St. Thomas to a detention facility in St. Croix.  In the motion, Davis argued that the Virgin Islands Bureau of Corrections ("BOC") had transferred him to the St. Thomas facility from the St. Croix facility in retaliation for exercising his constitutional rights, and further asserted that the St. Thomas facility screened his legal mail, monitored meetings between Davis and Attorney Phillips, and otherwise purportedly interfered with the attorney-client relationship.  The next day, the Superior Court issued an order scheduling a hearing for October 26, 2022, to address both the October 4, 2022 motion to transfer and the March 22, 2021 bail modification motion.  The People did not file a response to the transfer motion prior to the October 26, 2022 hearing, but Davis filed an addendum to his bail modification motion on October 24, 2022, which set forth additional arguments based on this Court's intervening decision in *Moran v. People*, 76 V.I. 544 (V.I. 2022).

¶ 10    The Superior Court began the October 26, 2022 hearing by considering arguments with respect to the transfer motion.  After hearing from counsel from both parties, as well as from representatives of the BOC, the Superior Court orally stated that it would enforce the requirement that there be "confidential, private communications between attorney and client" at the St. Thomas facility, but expressed concern that ordering a transfer to the St. Croix facility would be "meddling" with the authority of the BOC.  (J.A. 78.)  Ultimately, it directed the lawyers for both parties to confer with the BOC to explore "potential accommodations that may be acceptable to both sides" without the need for court action and stated that it would set the matter for another hearing on November 9, 2022.  (J.A. 79.)

¶ 11    The Superior Court then proceeded to consider the bail modification motion.  The Superior

Court began by hearing arguments from counsel, with Davis emphasizing that he was requesting either release on his own recognizance or cash bail set in an amount that he could afford to post as an indigent defendant. The Superior Court permitted Davis to present testimony from his sister and proposed third-party custodian, Jacqueline Davis. Afterwards, the People presented testimony from Naomi Joseph—a Commander in the Virgin Islands Police Department—who summarized Davis's numerous interactions with the police since the 1990s. After being asked if either side intended to present anything else, counsel for the People responded, "Your Honor, we would stand on the details as set forth in my original opposition," but that "if the Court feels it necessary, I can attempt to bring in any live witnesses to any of the numerous incidents that I detailed in my motion." (J.A. 111.)

¶ 12     The Superior Court held its second hearing on the transfer motion on November 9, 2022. In addition to hearing arguments from counsel, the Superior Court heard testimony from multiple BOC officials. At the conclusion of the hearing, the Superior Court stated that it would take the transfer motion under advisement. Shortly thereafter, on November 15, 2022, Davis filed an "Emergency Motion for Order Directing Production of Evidence or Implement an Investigation," which requested that the Superior Court direct the BOC to provide him certain evidence relevant to the testimony of the BOC officials made at the November 9, 2022 hearing.

¶ 13     On November 29, 2022, the Superior Court issued separate orders resolving both the bail modification motion and the transfer motion. In the Bail Order, the Superior Court nominally granted the motion by reducing the amount of bail from $1,000,000 to $250,000, but rejected Davis's request for release on his own recognizance or for a low cash bail that he could realistically afford to post. Notably, in addition to summarizing the parties' filings and the evidence introduced at the October 26, 2022 hearing, the Superior Court included in the Bail Order an 11-paragraph

long recitation of the grounds for which his prior court-appointed attorneys sought to withdraw their representation, which included, among other information, allegations that Davis had made "threats" to them, their family members, including a judge, and their staff, and that they believed Davis "to be violent," "a threatening human being," "combative," and "abusive" and that they "do[]not feel safe having any interactions with Davis." (J.A. 121.) The Superior Court stated that it would consider this evidence in its analysis because these threats "are well documented in the record." (J.A. 128.)

¶ 14    In the Transfer Order, the Superior Court denied the transfer motion after crediting the testimony it heard from BOC officials with respect to both the reasons for the transfer, as well as the BOC's efforts to respect the confidentiality of attorney-client communications. The Superior Court determined that "[i]t is not a court's place to dictate how a bureau within the executive branch manages its internal affairs," but stated that "[t]o the extent that BOC falls short in its pledge to provide constitutionally protected means for confidential communications between Davis and counsel, the matter may be revisited." (J.A. 132-33.) It also denied Davis's motion for production on grounds that providing the relief requested "would be contrary not only to BOC's well-established autonomy, but also to basic separation of powers principles." (J.A. 133.)

¶ 15    Davis timely filed a notice of appeal with this Court on December 13, 2022, *see* V.I. R. APP. P. 5(b)(1), seeking to appeal from both the Bail Order and the Transfer Order.

## II. DISCUSSION

### A. Appellate Jurisdiction

¶ 16    Prior to reaching the merits of a case, this Court must determine whether it has subject matter jurisdiction over the dispute. *Willis v. People*, 71 V.I. 789, 795 (V.I. 2019) (collecting cases). Ordinarily, we may only exercise jurisdiction over appeals arising from final judgments,

final decrees, or final orders of the Superior Court. *See* 4 V.I.C. § 32(a). Although the Superior Court has not entered a final judgment in the underlying case, since the criminal charges against Davis remain pending, orders denying motions for modification of bail, or orders granting bail modifications pursuant to conditions that the defendant cannot satisfy, qualify for immediate appeal pursuant to the collateral order doctrine, which provides that an order may be considered "final" for the purposes of review when it (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue completely separate from the merits of the action," and (3) is "effectively unreviewable on appeal from a final judgment." *Rieara v. People*, 57 V.I. 659, 664-65 (V.I. 2012) (collecting cases). Therefore, we possess jurisdiction to review the Bail Order.

¶ 17    The same, however, is not true of the Transfer Order. In his appellate brief, Davis presumes that because the Bail Order is appealable to this Court, the Transfer Order may likewise be appealed. But although the Superior Court issued the Transfer Order on the same day as the Bail Order, the fact that Davis may immediately appeal the Bail Order to this Court as of right does not mean that he is also permitted to appeal the Transfer Order. Rather, Davis may only appeal the Transfer Order if (1) the Transfer Order is "inextricably intertwined" with an appealable order, in this case the Bail Order; or (2) an independent jurisdictional basis exists for this Court to consider an appeal from the Transfer Order, such as the Transfer Order also satisfying the requirements for immediate appeal under the collateral order doctrine. *See People v. Ward*, 55 V.I. 829, 839 (V.I. 2011) (collecting cases).

¶ 18    The Transfer Order does not qualify for an immediate appeal on either ground. For an ordinarily unappealable order to be inextricably intertwined with an appealable order, either "the appealable issue cannot be resolved without reference to the otherwise unappealable issue" or "resolution of the issue properly raised on interlocutory appeal necessarily resolves the pendent

issue." *Id.* (collecting cases). Unquestionably, the issues raised in Davis's appeal from the Bail Order can all be resolved without considering any of the issues raised in his attempted appeal from the Transfer Order—there is no set of circumstances in which resolution of any claim with respect to the Transfer Order would influence any aspect of our review of the Bail Order. And while this Court's disposition of the Bail Order could in some circumstances affect disposition of the Transfer Order, it would not do so on the merits, but only by rendering the Transfer Order moot if the relief ordered by this Court with respect to the Bail Order resulted in Davis no longer being incarcerated.

¶ 19    Likewise, there is no independent jurisdictional basis for an immediate appeal from the Transfer Order. While title 4, section 33(d)(4) of the Virgin Islands Code provides that

> [a]n appeal by a defendant or person ordered detained pursuant to section 3504a, of title 5 of the Virgin Islands Code or other provision of law, shall lie to the Supreme Court from a decision or order, entered by the Superior Court, detaining a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order of detention[,]

this Court has already held that the phrase "person ordered detained" does not encompass an individual whose release has been authorized by the Superior Court but who nevertheless remains incarcerated due to a failure to satisfy the bail conditions imposed by the Superior Court. *Moran*, 76 V.I. at 551 n.2 (citing *Rieara*, 57 V.I. at 664). Consequently, section 33(d)(4) cannot establish the jurisdictional basis for an appeal from the Transfer Order, given that Davis is not "detained" and the Transfer Order therefore did not "deny[] a motion for . . . modifications of the conditions of[] a decision or order of detention."

¶ 20    The Transfer Order also fails to satisfy any—let alone all three—of the factors necessary under the collateral order doctrine. As mentioned earlier, an appeal is authorized under the collateral order doctrine if the order appealed from (1) "conclusively determine[s] the disputed question," (2) "resolve[s] an important issue completely separate from the merits of the action,"

and (3) is "effectively unreviewable on appeal from a final judgment." *Rieara*, 57 V.I. at 664-65

(collecting cases). Although the Transfer Order denied Davis's transfer motion, it did not

conclusively resolve the issue; in its Transfer Order, the Superior Court expressly stated that "[t]o

the extent that BOC falls short in its pledge to provide constitutionally protected means for

confidential communications between Davis and counsel, the matter may be revisited." (J.A. 132-

33.) Because the Superior Court expressly acknowledged that it may revisit the matter, the

Transfer Order was not "made with the expectation that [it] will be the final word on the subject

addressed." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 12 n.14 (1983);

*see also Range v. 480-486 Broadway, LLC*, 810 F.3d 108, 112-13 (2d Cir. 2015).

¶ 21     The question resolved in the Transfer Order is also not an important one. An issue is

"important" for purposes of the second prong of the collateral order doctrine if it involves a

"substantial public interest." *Will v. Hallock*, 546 U.S. 345, 353 (2006). "Examples of 'important

issues' significant enough to justify immediate appellate jurisdiction under the [second prong of

the] collateral order doctrine include denials of the defenses of absolute presidential immunity,

qualified immunity, Eleventh Amendment immunity, and double jeopardy." *Miccosukee Tribe of

Indians of Florida v. S. Fla. Water Mgmt. Dist*., 559 F.3d 1191, 1199 (11th Cir. 2009) (collecting

cases). In other words, the issue must involve "some particular value of high order," such as

"honoring the separation of powers" or "respecting a State's dignitary interests." *Will*, 546 U.S.

at 352-53. While Davis maintains that his transfer from the St. Croix facility to the St. Thomas

facility implicates his rights under the Sixth Amendment to the United States Constitution, the fact

that a constitutional right is implicated, without more, does not render the issue "important" for

purposes of the collateral order doctrine. *See, e.g., Plaintiff A v. Schair*, 744 F.3d 1247, 1255 (11th

Cir. 2014) (holding that an issue is not "important" for purposes of invoking the collateral order

doctrine simply because it implicates a party's exercise of the constitutional right against self-incrimination).  This is particularly true in a case such as this, where the Superior Court *agreed* with Davis that the BOC needed "to provide constitutionally protected means for confidential communications between Davis and counsel" and expressly stated that it would revisit the transfer issue if the BOC failed to do so.  (J.A. 133.)

¶ 22    Finally, with respect to the third prong of the collateral order analysis, the issue is not effectively unreviewable on appeal from a final judgment.  The main thrust of Davis's transfer motion is that his Sixth Amendment right to the effective assistance of counsel will be infringed if he continues to remain incarcerated in the St. Thomas facility, given that his court-appointed counsel is located on St. Croix as well as his allegations that staff at the St. Thomas facility were reading his legal mail and monitoring attorney-client communications.  If Davis's allegations prove correct, an obvious remedy is available on appeal after entry of a final judgment, in the form of a new trial and exclusion of any evidence unlawfully obtained by BOC staff.  Moreover, Davis may obtain redress outside of the instant criminal case as well, in that if the BOC transferred Davis in retaliation for activity protected by the First Amendment, is intentionally monitoring his attorney-client communications, or otherwise is violating his clearly-established constitutional rights, he is free to pursue a civil action for money damages pursuant to 42 U.S.C. § 1983.

¶ 23    For the foregoing reasons, Davis has failed to establish that this Court possesses jurisdiction to review the Transfer Order on appeal.  Therefore, we dismiss that portion of his appeal for lack of jurisdiction.

### B. Reliance on Attorneys' Motions to Withdraw as Counsel in Determining Bail

¶ 24    In his appellate brief, Davis challenges, on numerous grounds, the correctness of the Superior Court's Bail Order.  As this Court previously explained,

> We review the trial court's decisions regarding the amount of bail and other release conditions for abuse of discretion. The Superior Court abuses its discretion when its decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact.

*Davis*, 76 V.I. at 518 (internal citations omitted).  Among the arguments raised by Davis is that the Superior Court erred in considering, as substantive evidence, the contents of his former court-appointed attorneys' motions to withdraw.

¶ 25    We agree.  In its Bail Order, the Superior Court set forth, at considerable length, the reasons Davis's former court-appointed attorneys had given for seeking to withdraw as counsel in their respective motions to withdraw.  The Superior Court relied on these allegations—which largely involved characterizations of Davis as "violent," "threatening," "combative," and "abusive"—as substantive evidence to support its determination that cash bail in the amount of $250,000 was warranted, characterizing them as "well documented in the record."  (J.A. 128.)

¶ 26    The Superior Court's consideration of these allegations in its Bail Order raises several concerns.  Unquestionably, violent threats and harassment directed towards lawyers, judges, and their staff and families are directly relevant not just to whether a defendant is a danger to the community, but also whether the defendant will comply with all court orders directed towards him.  Nevertheless, it is a bedrock principle of our judicial system that courts should issue decisions based on arguments made and evidence presented by the parties rather than "blindsiding litigants" by issuing a ruling based on "arguments their adversaries never made."  *Misicki v. Caradonna*, 909 N.E.2d 1213, 1218 (N.Y. 2009).

¶ 27    Certainly, there are exceptions to this general principle.  For instance, "[t]his Court has repeatedly cautioned that parties may not, through explicit agreement or implicitly by omission, stipulate to the law," *Simmonds v. People*, 59 V.I. 480, 493 (V.I. 2013) (collecting cases), and thus

the Superior Court possesses an obligation to apply the law correctly and not blindly follow the erroneous interpretations proffered by the parties. *See Heywood v. People*, 63 V.I. 846, 855 (V.I. 2015) (acknowledging that the Superior Court cannot impose an illegal sentence simply because the parties believe it is legal) (collecting cases). But this same principle does not extend to questions of fact—on the contrary, this Court, like numerous courts in other jurisdictions, has disapproved of judges engaging in their own fact-finding. *See In re People of the V.I.*, 51 V.I. 374, 389 (V.I. 2009) (collecting cases). Nor may a judge assert defenses, such as the statute of limitations, on behalf of a party *sua sponte* when that party has failed to request that relief. *See Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 538 (V.I. 2015). This is because "[e]xtending such power to judges would blunt the adversarial process on which the criminal justice system depends for reliability and accuracy," *Lagway v. Dallman*, 806 F.Supp. 1322, 1337 (N.D. Ohio 1992), in that it "would not only relieve the state of its burden" on that particular issue, "but would deprive the defendant of the opportunity to address the issue." *State v. Williams*, No. 2 CA-CR 2014-0183, 2015 WL 7687230, at *9 (Ariz. Ct. App. Nov. 27, 2015) (unpublished).

¶ 28    Pursuant to the Virgin Islands Bill of Rights codified in section 3 of the Revised Organic Act of 1954—the Territory's *de facto* constitution[2]—"[a]ll persons shall be bailable by sufficient sureties in the case of criminal offenses, except for first degree murder or any capital offense when the proof is evident or the presumption is great." 48 U.S.C. § 1561. This Court, like virtually every other court to construe similar or identical language in its state constitution, has determined "that the burden of proof rests with the government." *Browne v. People*, 50 V.I. 241, 259 (V.I. 2008) (collecting cases). Assigning the burden of proof on the government to prove what sureties

---

[2] *In re McRae*, 74 V.I. 620, 634 (V.I. 2021); *Brow v. Farrelly*, 994 F.2d 1027, 1032 (3d Cir. 1993).

are sufficient is necessary not just because the defendant is presumed innocent, but because as a practical matter the government is in a better position to introduce evidence relevant to the bail determination, such as whether the defendant is a flight risk or a danger to the community. *See Fry v. State*, 990 N.E.2d 429, 441 (Ind. 2013).

¶ 29    This does not mean, of course, that the Superior Court must always remain "willfully blind" to matters contained in the record to avoid becoming an advocate for a party. *People v. Parish*, No. 335829, 2018 WL 3862085, at *8 (Mich. Ct. App. Aug. 14, 2018) (unpublished). For instance, this Court has repeatedly held that the Superior Court not only possesses the discretion, but is required, to consider the issue of subject matter jurisdiction *sua sponte*, even if not raised by either party. *See, e.g., Brunn v. Dowdye*, 59 V.I. 899, 905 (V.I. 2013). This Court has even held that the Superior Court may *sua sponte* convert a party's motion for judgment on the pleadings to a motion for summary judgment so that it may "consider evidence outside of the pleadings." *United Corp. v. Hamed*, 64 V.I. 297, 307 (V.I. 2016). And, of course, the Superior Court may even take judicial notice of certain facts. *See* V.I. R. EVID. 201.

¶ 30    Nevertheless, this Court has consistently emphasized that while the Superior Court may raise a matter *sua sponte*, it cannot adjudicate a matter *sua sponte*. *In re Reynolds*, 60 V.I. 330, 336 (V.I. 2013). When the Superior Court chooses to act *sua sponte* in a manner that affects the substantial rights of the parties—such as by disposing of a motion or entire case on a ground not raised by a party—the Superior Court is required to "at an absolute minimum," provide the parties "with an opportunity to be heard with respect to any grounds . . . being raised by the Superior Court *sua sponte*." *United Corp. v. Tutu Park Ltd*., 55 V.I. 702, 711 (V.I. 2011) (collecting cases); *see also Clarke v. Lopez,* 73 V.I. 512, 515-16 (V.I. 2020); *Gayanich v. Gayanich,* 69 V.I. 583, 598 (V.I. 2018); *Gumbs v. Koopmans*, 66 V.I. 429, 433 (V.I. 2017); *Hughley v. Gov't of the V.I.,* 61

V.I. 323, 333-34 & n.6 (V.I. 2014); *Reynolds,* 60 V.I. at 336; *Brunn*, 59 V.I. at 905; *Mendez v.*

*Gov't of the V.I.*, 56 V.I. 194, 204-05 (V.I. 2012).

¶ 31    By *sua sponte* considering the motions to withdraw as substantive evidence to justify

imposing bail in the amount of $250,000, without first advising the parties of its intent to do so,

the Superior Court deprived Davis of his right to be heard.  While the Superior Court correctly

noted in its Bail Order that the motions to withdraw were part of the court record, this Court has

already held that "while a trial court may take judicial notice of the existence of a document that

has been filed with it, it may not assume, through judicial notice, that the contents of those

documents are true unless the other requirements for judicial notice are met." *Farrell v. People*,

54 V.I. 600, 616 (V.I. 2011).  As such, while the Superior Court could take judicial notice that

Davis's prior court-appointed attorneys had filed motions to withdraw, it could not take judicial

notice that the claims those attorneys made in support of their motions to withdraw were true.

¶ 32    To rely on the substantive claims made in the motions, the Superior Court was required—

at an absolute minimum—to advise Davis that it intended to rely on those allegations and provide

him with an opportunity to be heard in response.  Had the Superior Court done so, Davis may very

well have chosen to present his case differently at the October 26, 2022 hearing.  He might have

asserted that some or all the allegations made in the motions were privileged under the attorney-

client privilege[3] or the general duty of confidentiality an attorney owes to a current or former

---

[3] In the Bail Order, the Superior Court stated "the Virgin Islands Rules of Evidence do not apply" to bail proceedings.  (J.A. 125.)  This, however, is not entirely accurate; while Rule 1101(d) exempts bail proceedings from strict adherence to the Virgin Islands Rules of Evidence, both Rule 1101(c) and (d) expressly provide that the rules on privilege do indeed apply to all proceedings, even those otherwise exempt.  Significantly, Rule 502 of the Virgin Islands Rules of Evidence expressly recognizes the attorney-client and work-product privileges. And, to be sure, federal cases indicate that courts may look to the Federal Rules of Evidence as a guide in resolving evidence questions, even in situations where those rules do not strictly apply. *See, e.g.*, Nieves-Rodriguez

client.[4]  He might have attacked their admissibility on other grounds, such as the fact that many of

_____

v. Peake, 22 Vet. App. 295, 302 (2008) ("While the Federal Rules of Evidence are not binding in this [c]ourt, . . . the rules . . . provide useful guidance that has been exhaustively vetted by both the Rules Advisory Committee and by the U.S. Congress."); *Madariaga v. Sec'y of the HHS*, 2015 U.S. Claims LEXIS 1318, at \*19 (Fed. Cl. Sep. 26, 2015) ("Although the Federal Rules of Evidence and cases interpreting them are not binding on special masters, they can guide their decisions."); Fei Yan Zhu v. AG United States, 744 F.3d 268, 273 (3d Cir. 2014) ("Although the Federal Rules of Evidence do not apply to immigration proceedings, . . . significant indicia of reliability [of proffered evidence] may be shown in various ways," including by "turn[ing] to the Federal Rules of Evidence, even though they are not binding, for guidance."). Given that the Virgin Islands Rules of Evidence were modeled on the Federal Rules of Evidence, federal cases construing the latter would appear to be persuasive authority when construing the former. *See, e.g.*, *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 419-20 (V.I. 2016) ("[C]ourts typically view . . . earlier constructions of borrowed rules as [being] persuasive, not mandatory.").

[4] Rule 211.1.16 of the Virgin Islands Rules of Professional Conduct, which governs the termination of a lawyer's representation of a client, requires a lawyer to seek permission from the court to withdraw from a case.  However, Rule 211.1.6 provides that "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent" except in very narrow circumstances, such as a need "to prevent reasonably certain death or substantial bodily harm."  Importantly, a lawyer seeking to withdraw representation of a client nevertheless possesses an ethical obligation to "take steps to the extent reasonably practicable to protect a client's interests".  V.I. S.Ct.R. 211.1.6(d). Rules 211.1.6 and 211.1.16 are virtually identical and modelled after Model Rules 1.6 and 1.16 of the American Bar Association Model Rules of Professional Conduct, and courts have consistently held that these two rules must be interpreted in tandem, with it being unethical for a lawyer to gratuitously disclose more the minimum information necessary to advise the court of the reasons for seeking withdrawal.  *See, e.g., In re Gonzalez*, 773 A.2d 1026 (D.C. 2001); *see also* Am. Bar Ass'n Formal Opinion 476.

Most of the motions to withdraw filed with the court were not filed under seal or on an *ex parte* basis, were served on the People yet not served on Davis, and fully viewable to the public on the Virgin Islands Judiciary Electronic Filing System.  Moreover, several of the motions made factual allegations yet were not attested to under oath, and many disclosed information that went beyond the minimum necessary for the Superior Court to rule on the motion.  We therefore take this opportunity to advise all concerned that "documents in support of motions to withdraw as counsel" be "filed under seal where necessary to preserve the confidentiality of the attorney-client relationship between a party and its counsel" or *ex parte* so as "to prevent a party from being prejudiced by the application of counsel to withdraw."  *Team Obsolete Ltd. v. A.H.R.M.A. Ltd.*, 464 F.Supp.2d 164, 165 (E.D.N.Y. 2006) (collecting cases).

the allegations were not made under oath,[5] or constituted unreliable hearsay or double hearsay.[6]

He may have elected to call some or all of those attorneys as witnesses so that he could cross-examine them or to introduce his own evidence to rebut the allegations. Or he might have chosen not to dispute the truth of the representations made by his former attorneys, and instead provide reasons as to why the Superior Court should afford them little or no weight. But by proceeding in the manner it did, the Superior Court prevented Davis from making any argument or presenting any evidence of his own to respond to the serious allegations leveled against him.[7] Consequently, we reverse the Bail Order, and remand the case to the Superior Court so that it may provide Davis with an opportunity to be heard with respect to the allegations of his former court-appointed attorneys' and any other evidence it considered *sua sponte*.[8] *See, e.g., Gumbs*, 66 V.I. at 432;

---

[5] *See Henry v. Dennery*, 55 V.I. 986, 994 (V.I. 2011) ("[U]nsworn representations of an attorney are not evidence.") (collecting cases).

[6] *See Williams v. People*, 53 V.I. 514, 532 (V.I. 2010) (providing that hearsay statements, while not *per se* inadmissible in a bail hearing, may not be relied upon as substantive evidence unless the trial judge "ascertain[s] the reliability" of the hearsay statements).

[7] As noted above, the Superior Court emphasized that "the Virgin Islands Rules of Evidence do not apply" to bail proceedings. (J.A. 125.) However, "although the rules of evidence do not apply . . . this does not mean that there are no standards whatsoever." *United States v. Golden*, 418 F.Supp.3d 416, 422 (D. Minn. 2019). For instance, this Court has already held that the fact that technical rules of evidence do not apply to a proceeding does not mean that a tribunal may do away with the right to due process by allowing submission of *ex parte* evidence or depriving a party of the right to be heard. *Hard Rock Café v. Lee*, 54 V.I. 622, 632-33 (V.I. 2011). Instead, the Virgin Islands Rules of Evidence may properly be used as non-binding persuasive authority to guide the resolution of evidentiary issues, even in matters in which the rules do not strictly apply. *See supra* note 3.

[8] Since we reverse the Bail Order due to the Superior Court relying on the allegations in the motions to withdraw without providing Davis with a right to be heard, we need not consider the other issues Davis has asserted in his brief, including his argument that the Superior Court abused its discretion by setting bail at $250,000, since the Superior Court may set bail at a different amount on remand.

*Reynolds*, 60 V.I. at 336; *Brunn*, 59 V.I. at 905; *Mendez,* 56 V.I. at 204–05.

### III. CONCLUSION

¶ 33     While we may exercise appellate jurisdiction to review the Bail Order, we lack jurisdiction

to review the Transfer Order because it is not inextricably intertwined with the Bail Order and no

independent jurisdictional basis for an appeal from the Transfer Order exists.  With respect to the

Bail Order, we conclude that the Superior Court erred when it relied on the allegations made by

Davis's former court-appointed attorneys in their motions to withdraw as counsel, given that the

Superior Court considered these materials *sua sponte* without providing Davis with a right to be

heard.  Accordingly, we dismiss the appeal from the Transfer Order for lack of jurisdiction and

reverse the Bail Order solely on the basis that the Superior Court improperly considered the

allegations in the motions to withdraw *sua sponte* without providing Davis with a right to be heard.

On remand, the Superior Court must provide Davis with an opportunity to be heard with respect

to the matters raised by the Superior Court *sua sponte*.

**Dated this 19th day of December, 2023.**

                                                        **BY THE COURT:**

                                                        /s/ Rhys S. Hodge_____
                                                        **RHYS S. HODGE**
                                                        **Chief Justice**


**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By: /s/Jahkyda Coakley**
    **Deputy Clerk**

**Dated**: **December 19, 2023**